[No. 4308. Decided September 9, 1902.]

EMANUEL W. BLOOMINGDALE, as Assignee, Respondent, v. CHARLES WEIL, Appellant.

EMANUEL W. BLOOMINGDALE, as Assignee, Respondent, v. SECURITY SAFE DEPOSIT AND TRUST COMPANY, Appellant.

APPEAL—DEFECTIVE BOND—AMENDMENT ON MOTION TO DISMISS.

Under Laws 1899, p. 29, which provides that on the hearing of a motion to dismiss an appeal the supreme court may allow all amendments in matters of form, and that no appeal shall be dismissed for any informality or defect in the appeal bond,

etc., if the appellant shall forthwith, upon order of the court, perfect the appeal, an appeal will not be dismissed because the bond, while purporting on its face to be made by the appellants and a surety as a jo.nt and several obligation, was signed by the surety alone, but the appellants will be permitted to complete its execution by signing it at the time of the hearing of the motion for dismissal.

FOREIGN ASSIGNMENTS—RIGHTS OF ASSIGNEE AS AGAINST FOREIGN CREDITORS.

A foreign creditor of a foreign debtor cannot attach his debtor's realty in this state, where the debtor has made a voluntary assignment of all his property for the benefit of creditors to a foreign assignee, who has complied with the laws of this state relating to the recording of such instruments, when such assignment was valid under the laws where executed and does not conflict with the laws or public policy of this state.

SAME—QUIETING TITLE—EFFECT OF DEED OF ASSIGNMENT DEFECTIVELY CERTIFIED.

A deed of assignment made in another state and properly acknowledged, but defectively certified by reason of the absence of the notary's seal and of the certificate of a clerk of a court of record authenticating such notary and his signature, as required by Bal. Code, § 4528, is sufficient to pass the equitable title to realty in this state to the assignee, and enable him to maintain action to quiet title thereto, under Bal. Code, § 5508, as against foreign creditors, inasmuch as they do not occupy the relation of *bona fide* purchasers.

Appeal from Superior Court, Spokane County.—Hon. GEORGE W. BELT, Judge. Affirmed.

*H. M. Stephens* and *Samuel R. Stern,* for appellants.

*Graves & Graves,* for respondent.

The opinion of the court was delivered by

WHITE, J.—The foregoing cases were consolidated. They involved the same questions, arising from· the same state of facts. The respondent claims to· be the owner of certain real estate in Spokane county by virtue of a voluntary assignment made by insolvent debtors in New York for

the benefit of their creditors. The plaintiff alleges in the complaint the assignment and the terms thereof, and that the defendants were citizens of Massachusetts at all times, and that the assignments were made under the provisions of and in compliance with the statutes of the state of New York providing for voluntary assignment by debtors. The provisions of the New York statute are set out. The bringing of the suit by the defendants hereinafter mentioned in the findings of fact is also alleged. The plaintiff prayed for a judgment and decree of the court; that the court decree that the defendants take no right, title, or interest in, and acquire no lien upon, the realty described, by virtue of the writs of attachment issued in the suits instituted by the defendants and the judgments recovered in said suits; and, further, that the levy of said writs of attachment and judgments were apparent liens and cast a cloud upon plaintiff's title to the land, and he prayed for a decree of the court that such apparent lien should be removed, and the title to the land quieted in the plaintiff, and that the plaintiff should have such other and further relief as should seem meet and equitable. The court rendered a decree, on the findings hereinafter set out, that the plaintiff, as assignee of the partnership property of the copartnership of M. A. & D. Bettman, etc., was the owner of the land described in the findings under and by virtue of the deeds of assignments in the findings mentioned, and that the judgments and attachments referred to in the findings in no way affect the title acquired by the plaintiff as assignee, and the court decreed and declared that the title to said land was free and discharged from any apparent cloud by virtue of such attachment proceedings, etc., and that the plaintiff's title acquired by the assignments was a valid and superior title to the appellants, etc. The findings of fact were as follows:

"1. That at all times herein mentioned the defendant Weil, was, and now is, a citizen and resident of the state of Massachusetts, and during the same period, the defendant, the Security Safe Deposit & Trust Company, was, and now is, a corporation created under the laws of the state of Massachusetts, with its principal office and place of business in the town of Lynn in said state, and is a corporation of said state.

"2. That prior to March 5, 1898, one David Bettman, a resident and citizen of the state of New York, held title to certain realty situate within the county of Spokane, state of Washington, more particularly described as follows: (Here follows a long list of real property). The title to the realty hereinbefore described, though standing in the name of David Bettman, was, in fact, the property of a co-partnership, known as M. A. and D. Bettman, of which said David Bettman was a member.

"3. That on March 5, 1898, and for some time prior thereto, said David Bettman, was a member of a co-partnership doing business in the city, county and state of New York, under the firm name of Stettheimer & Bettman, Henrietta B. Stettheimer being the other member of said co-partnership. During the same period, said David Bettman was a member of a co-partnership of M. A. and David Bettman, hereinbefore referred to; said co-partnership being engaged in business likewise in the city, county and state of New York, the other member thereof being Marcus A. Bettman.

"4. That on the 5th day of March, 1898, in the said county and state of New York, Marcus A. Bettman and David Bettman, as co-partners and individually, executed, acknowledged and delivered to plaintiff an assignment of all their estate, real and personal, of whatsoever description and wheresoever situate, upon conditions therein stated. This assignment recited, that whereas said Marcus A. Bettman and David Bettman, as partners and individuals, were justly indebted to sundry persons in divers and sundry sums of money, and, being unable to pay the same in full, were desirous of making an equitable distribution of their property and effects among their creditors, that they there-

fore granted, bargained, sold, assigned, and delivered over
to plaintiff, his successors and assigns, all and singular
the estate and property, real and personal, of every kind
and nature, and wheresoever the same might be found, of
the said Marcus A. and David Bettman; but in trust for
these purposes: That plaintiff, as such assignee, and in
trust for the purposes hereinafter specified, should take
possession of all the estate, property and effects by said in-
strument assigned, transferred, and conveyed, and sell and
dispose of the same, convert it into money, collect all sums
of money due and owing to the said first parties, and out of
such proceeds to pay the costs, charges and expenses of
carrying into effect the assignment, including a lawful
commission to the assignee; to pay all wages and salaries
owing to the employees of said Marcus A. and David Bett-
man; from the proceeds of the partnership property to pay
to the creditors of the partnership such sums as might
be owing them, and with the residue of the proceeds, if
any should remain after paying the partnership debts, to
pay and discharge the private and individual debts of the
said Marcus A. and David Bettman. Of the separate and
individual property of said Marcus A. and David Bettman,
so assigned to this plaintiff as assignee, it was directed that
after paying the expenses of the assignment, and all wages
and salaries owing to the employees of the individual mem-
bers of said partnership, the assignee should apply the
proceeds of the separate estate of each of said partners to
the payment of their individual debts, and providing that,
in case the individual property and estate should be more
than sufficient to pay the respective individual debts and
liabilities of said partners, in such event the surplus re-
maining was to be applied to the payment and liquidation
of the partnership debts, or of any balance which might
remain unpaid after applying thereto the proceeds of the
partnership property. To the furtherance of this assign-
ment this plaintiff was constituted the true and lawful
attorney of the said co-partnership and of the individual
members thereof, with full power and authority to do all
acts and things necessary to the full execution of the trust
thereby created. At the same time and place the co-

partnership of Stettheimer & Bettman, composed of the said David Bettman and the said Henrietta B. Stetthoimer, executed, acknowledged and delivered a like assignment to plaintiff, whereby their real and personal property of every kind and nature was sold, assigned, transferred and set over unto plaintiff, and whereby likewise the individual property of each of said co-partners was sold, assigned, transferred and set over unto plaintiff. This assignment was in all respects like unto the first assignment hereinbefore referred to, and their estate was conveyed to plaintiff for the same trusts, both as to the partnership and the individual property. Plaintiff, in writing, and by the same agreement whereby said trusts were created, accepted each and every trust created by each and every assignment hereinbefore referred to, gave bond as required by law, and at once entered upon the discharge of the duties of the trusts so created; and said assignments were, on March 5, 1898, recorded in the office of the clerk of the county of New York and of the supreme court of said state in said county, and certified copies were thereafter, and on March 11, 1898, recorded in the office of the county auditor of Spokane county, state of Washington.

"5. That said assignments were made under the provisions of and in compliance with a statute of the state of New York, providing for voluntary assignments by debtors for the benefit of their creditors. The material portions of said law are set forth in the amended complaints in these actions, and reference is made to said complaints for their contents for the purpose of brevity in these findings, and to avoid setting them forth in full herein.

"6. That on or about the 22d day of April, 1898, the defendant, the Security Safe Deposit & Trust Company, commenced an action in the superior court of Spokane county, state of Washington, wherein it was plaintiff, and David Bettman, Henrietta B. Stettheimer and Marcus A. Bettman were defendants. The cause of action alleged in said complaint was one upon a promissory note executed by the co-partnership of Stettheimer & Bettman, payable to themeslves, and indorsed, before delivery, by the co-partnership of Stettheimer & Bettman and of Marcus A.

Bettman and David Bettman, and thereafter delivered by said co-partnerships to one Charles Weil, and by him, before maturity, assigned to the Security Safe Deposit & Trust Company. Upon the commencement of said action the said Security Safe Deposit & Trust Company filed, in the office of the clerk of the superior court of Spokane county, an affidavit and a bond for the procurement of the issuance of a writ of attachment therefrom, and thereupon the said clerk of the said superior court did issue a writ of attachment against the property of the defendants named in said action, and it was thereupon delivered to the sheriff of Spokane county and he, acting under the authority of said writ of attachment, did levy, on the same day, upon the real property hereinbefore described as the property of David Bettman. That thereafter, and on, towit, the 22d day of July, 1898, said court in said cause rendered judgment against said David Bettman in the sum of five thousand dollars with interest thereon at the rate of seven per cent. per annum from March 16, 1898; and plaintiff in said cause thereupon filed the said judgment with the clerk of said court.

"7. That on or about the 9th day of March, 1898, the defendant, Charles Weil, commenced an action in the superior court of Spokane county, state of Washington, wherein he was named as plaintiff, and Henrietta B. Stettheimer, Marcus A. Bettman and David Bettman were named as defendants. The cause of action stated in said complaint was to recover upon two promissory notes executed in October, 1897, and February, 1898, respectively, by the co-partnership of Stettheimer & Bettman, payable to themselves and indorsed upon the back, before the delivery thereof, by the co-partnership of Stettheimer & Bettman and of Marcus A. Bettman and David Bettman, and thereafter delivered to the plaintiff therein. At the time of the commencement of said action the said plaintiff caused to be filed, in the office of the clerk of said superior court, an affidavit and bond for the procurement of the issuance of a writ of attachment therefrom, and thereupon the said clerk of the said superior court did issue a writ of attachment against the property of the defendants

named in said action, and the same was thereupon delivered to the sheriff of Spokane county, and under and in pursuance of said writ of attachment he levied upon, on the same day, the real property hereinbefore described, as the property of David Bettman. That thereafter, and on, towit, the 22d day of July, 1898, said court in said cause rendered judgment against said David Bettman in the sum of ten thousand ($10,000) dollars, with interest on five thousand ($5,000) dollars from October 9, 1898, at the rate of seven per cent. per annum, and interest on five thousand (5,000) dollars, from March 1, 1898, at the rate of seven per cent. per annum, and costs of suit taxed at twenty-four ($24) dollars; and plaintiff thereupon filed the said judgment with the clerk of said court.

"8. That on or about the 22d day of April, 1898, the defendant Charles Weil, commenced an action in the superior court of Spokane county, state of Washington, wherein he was named as plaintiff and Henrietta B. Stettheimer, David Bettman and Marcus A. Bettman were named as defendants. The cause of action alleged in said complaint was upon a promissory note executed by the firm of Stettheimer & Bettman in February, 1898, payable to themselves and indorsed on the back thereof, before delivery, by the co-partnerships of Stettheimer & Bettman and Marcus A. & David Bettman, and thereafter by them delivered to the plaintiff therein named. Upon the commencement of said action, and upon the same day, an affidavit for a writ of attachment and a bond were filed in said superior court by said Weil, and a writ of attachment was issued by the clerk of said superior court delivered to the sheriff of Spokane county, who thereupon levied upon the real property hereinbefore described and referred to, and said levy is still of force and effect. That thereafter, and on, towit, the 22d day of July, 1898, the said court in said cause rendered judgment against the said David Bettman in the sum of five thousand ($5,000) dollars and interest thereon at the rate of seven per cent. per annum from February 5, 1898, and costs taxed at twenty-four ($24) dollars, and plaintiff thereupon filed the same with the clerk of said court.

"9. That in the several proceedings heretofore referred
to had and taken by the defendants respectively against
the assignors of the plaintiff, executions have been issued
upon the judgments so rendered, and sales of the realty
herein described were made, wherein the defendants
respectively became the apparent owners of the pieces and
parcels of property herein described. That such proceed-
ings, and the whole of them, created an apparent lien
upon the title to these lands, and cast a cloud upon the
plaintiff's title, whereby the same is unmarketable."

There were two deeds of assignments to the respondent
offered and received in evidence,—one from David Bett-
man and Henrietta B. Stettheimer, and one from Marcus
A. Bettman and David Bettman. The evidence, we think,
fully sustains the second findings of fact of the court touch-
ing the title to the real property in controversy. We
are therefore concerned only with the assignment of Mar-
cus A. and David Bettman. This assignment recites that
the Bettmans are desirous of making an equitable distribu-
tion of their property and effects among their creditors.
Therefore, in consideration of the premises and one dollar,
they do grant, bargain, sell, and assign and deliver over
and convey unto the parties of the second part (the as-
signee) his successors and assigns, all and singular the
estate and property, real and personal, of every kind and
nature, and wherever the same may be, of the party (Bett-
mans) of the first part, which is held or owned by them as
a copartnership or as individuals. The assignee is to take
possession of the same, to sell and dispose of the same,
and to distribute the proceeds among the creditors *pro
rata,* as set out in the deed, and as required by the laws of
the state of New York. This deed of assignment was
signed by Marcus A. Bettman, David Bettman, and Eman-
uel W. Bloomingdale. The certificate of acknowledgment
to it is as follows:

"State of New York, City and County of New York, ss.

On the 5th day of March, in the year one thousand eight hundred and ninety eight, before me personally came Marcus A. Bettman, David Bettman, and Emanuel W. Bloomingdale, to me known, and known to me to be the individuals described in and who executed the foregoing instrument, and severally acknowledged to me that they executed the same for the purposes therein mentioned.

MOSES J. SNEUDAIRA,
Notary Public, N. Y. Co."

This deed of assignment was made on March 5, 1898, in New York. On March 9 and April 22, 1898, the property affected by this action and mentioned in the second finding of fact was attached and sold as set forth in the 6th, 7th, and 8th findings of fact. The respondent offered in evidence on the trial of this cause a copy of this assignment, certified to by the clerk of the county and supreme court of New York, and in whose office the original was recorded on March 5, 1898. This copy was also recorded in the auditor's office of Spokane county on March 11, 1898. Objection by the appellant was made to receiving the deed of assignment in evidence, among other things, on the ground that it did not show title in the plaintiff in this action, and could not pass title to any property within the state of Washington, and especially real property. At the close of the testimony the appellants moved the court to dismiss the action on the ground that it did not appear from the proof that the plaintiff had any right, title, or interest to the property or any portion thereof described in the complaint, or that he had any standing in court by virtue of any purported instrument of assignment which would enable him to bring this suit to remove a cloud; that there was nothing in the evidence to show that a general assignment had been executed. It was further objected that there was no seal attached to the

notary's certificate of acknowledgment, and no certificate of a clerk of a court of record to the signature of the notary, etc. The court denied the motion, and an exception was taken. The appellants, as we understand from the brief, do not now urge any objection to this deed of assignment on the ground that it is not the original, but a copy. They urge in their brief that the notarial seal was not affixed to the acknowledgment in the original, and that there was no certificate of a court of record that the notary public pretending to take the acknowledgment was duly authorized, etc. There are other objections, but they refer to the Bettman and Stettheimer assignment, and, as we view the findings and the evidence, are immaterial, because the assignee, if owner of the property in controversy, is so by virtue of the Marcus A. and David Bettman deed of assignment.

The respondent moves to dismiss the appeal because no bond on appeal has been given. The bond found in the record is in the penalty of $200, conditioned to pay all costs and damages which may be awarded against the appellant on appeal or on the dismissal thereof. The bond purports on its face to have been made by the appellants and one Samuel Glasgow as surety. It is joint and several in form. The surety alone signs the bond. The notice of appeal and bond were filed December 2, 1901. The respondent may move this court to dismiss the appeal when the appeal bond is not in form or substance such as to render the appeal effectual. Laws 1893, § 18, p. 129; § 6517, Ballinger's Code. Upon the taking of an appeal by notice, and the filing of a bond to render the appeal effectual, the supreme court acquires jurisdiction of the appeal. Laws 1893, § 16, p. 128; § 6515, Ballinger's Code. The appeal bond must be executed *in behalf* of the appellant by one or more sufficient sureties. Laws 1893, § 7, p. 122;

§ 6506, Ballinger's Code. The supreme court on the hearing of the motion to dismiss an appeal may allow all amendments in matters of form curative of defects in proceedings, to the end that substantial justice be secured to the parties, and no appeal shall be dismissed for any informality *or defect* in the notice of appeal, the appeal bond, etc., if the appellant shall forthwith, upon order of the supreme court, perfect the appeal. Laws 1899, p. 79. Under the last act the defect in the bond could be remedied by permitting the principal to now execute it, and the appeal should not be dismissed on account of this defect, but we should now allow the execution of the bond by the principal. *De Roberts v. Stiles,* 24 Wash. 612 (64 Pac. 795). In *Pennsylvania Mtge. Inv. Co. v. Gilbert,* 18 Wash. 667 (52 Pac. 246), in passing upon a similar question, we said:

"It was also contended that the bond was insufficient because it was not signed by two of the appellants in person, but that their names were affixed thereto by their attorney without special authority. We think this was sufficient, as the appellants would have been liable for the costs in any event, and the attorney had authority to appeal the case."

The respondent contends that the surety has the right to prescribe the terms upon which he will be bound; that he could execute a several bond in behalf of the appellant and be bound thereby. But where the bond shows that he only intended to be surety upon a joint and several bond, which should be executed by the appellant as well as himself, he can be bound by no other kind of an instrument, and as the appellant had not signed this instrument the surety is not bound, and consequently there is no bond in this case. The bond on its face purports to be the bond of the appellants and the surety. It was filed by the at-

torney for the appellants as and for their bond, when he gave notice of the appeal. It is no more than an ordinary cost bond. The appellants are liable in any event for the costs. It was executed on behalf of the appellants, and filed by them as their bond. Under the circumstances they are estopped from denying that it is their bond. We think the bond is sufficient, and the motion is denied.

The principle mainly contended for by the appellant is that a foreign creditor coming into this jurisdiction to enforce his demands in our courts against real estate of a foreign debtor should be accorded the same rights as are given to local creditors, especially in a cause where the contest is clearly between a foreign assignee of such debtor and the creditors who are seeking their remedy in this forum, no local creditors appearing to have any prior claim or interest in the property the title to which is in question.

We have held that an assignment for the benefit of creditors, which so far as it appears was executed with the necessary formalities of a deed for the conveyance of real estate, made in another state in accordance with its statutes and which was recorded in the proper county in such state, and in the office of the auditor of the county in this state in which the land was situated, while passing title to the assignor's realty in this state, does so subject to the right of creditors residing in this state to enforce claims against the assignor by suit and attachment against his property in this state. *Happy v. Prickett,* 24 Wash. 290 (64 Pac. 528). The assignment under consideration was made on motion of the debtors themselves. We have held that an assignment made on motion of the debtor himself for the benefit of creditors by a debtor in Minnesota of all his property, wherever situated, under the provisions of the insolvency law of Minnesota, would pass the personal property of the debtor in the state of Wash-

ington, and that it was a voluntary assignment. *Whitman v. Mast,* 11 Wash. 318 (39 Pac. 649, 48 Am. St. Rep. 874). The supreme court of the United States has held in one of the cases cited by the appellant that:

"The operation of voluntary or common-law assignments upon property situated in other states has been the subject of frequent discussion in the courts, and there is a general consensus of opinion to the effect that such assignments will be respected, except so far as they come in conflict with the rights of local creditors, or with the laws or public policy of the state in which the assignment is sought to be enforced. The cases in this court are not numerous, but they are all consonant with the above general principle. *Black v. Zacharie,* 3 How. 483; *Livermore v. Jenckes,* 21 How. 126; *Green v. Van Buskirk,* 5 Wall. 307; *Hervey v. R. I. Locomotive Works,* 93 U. S. 644; *Cole v. Cunningham,* 133 U. S. 107; *Barnett v. Kinney,* 147 U. S. 476." *Security Trust Co. v. Dodd, Mead & Co.,* 173 U. S. 624 (19 Sup. Ct. 545).

The appellants in support of their position cite us to *Security Trust Co. v. Dodd, Mead & Co., supra; Warner v. Jaffray,* 96 N. Y. 248 (48 Am. Rep. 616); *Catlin v. Wilcox Silver-Plate Co.,* 123 Ind. 477 (8 L. R. A. 62, 24 N. E. 250, 18 Am. St. Rep. 338); *Jenks v. Ludden,* 34 Minn. 482 (27 N. W. 188); *King v. Cross,* 175 U. S. 396 (20 Sup. Ct. 131); *Proctor v. Bank,* 152 Mass. 223 (9 L. R. A. 122, 25 N. E. 81); *Hibernia National Bank v. Lacombe,* 84 N. Y. 367 (38 Am. Rep. 518); *Barth v. Backus,* 140 N. Y. 230 (35 N. E. 425, 23 L. R. A. 47, 37 Am. St. Rep. 545); *Cole v. Cunningham,* 133 U. S. 107 (10 Sup. Ct. 269); *Paine v. Lester,* 44 Conn. 196 (26 Am. St. Rep. 442); *Kidder v. Tufts,* 48 N. H. 121; *Sturtevant v. Armsby Co.,* 66 N. H. 557 (23 Atl. 368, 49 Am. St. Rep. 627). In *Warner v. Jaffray* it was held, that the rule that a voluntary transfer of personal property

is to be governed by the laws of the owner's domicile is not of universal application, but yields when the laws and policy of the state where the property is located have prescribed a different rule of transfer. In short, it was held that the assignment in question was in conflict with the laws and public policy of the state of Pennsylvania, where the property was seized, it not having been recorded so as to transfer personal property, as required by the laws of Pennsylvania. *Catlin v. Wilcox Silver-Plate Co., supra*, involved a question of the conflicting rights of a receiver appointed by a foreign court and an attaching creditor in a domestic court to certain personal property. It was not a case of a voluntary assignment, such as the one in the case at bar, but of an involuntary assignment, and the court places its decision squarely upon the ground that the former will be recognized in a foreign court, but the latter will not be, saying:

"Property in a foreign state that has passed from an assignor to an assignee by a voluntary deed, and not by proceedings *in invitum* by process of law, is distinguished from like property in the hands of a receiver by operation of law, or by an assignment made under legal compulsion. Assignments of the latter class are held inoperative upon property not situate within the territory over which the laws that make or compel the debtor to make them have dominion."

It is true, however, that the court in its opinion cites with apparent approval *Paine v. Lester*, 44 Conn. 196 (26 Am. Rep. 442), and says:

"As has in effect been said, courts are prepared to extend comity where there is no reason to the contrary; especially if there is no interest of their own citizens, or of the citizens of another state, who are asking the protection of their laws, injuriously affected by such recognition."

40—29 Wash.

The following is the syllabus in *Jenks v. Ludden,*
*supra,* and expresses what is determined by the court:

"The copartnership of Walker, Judd & Veazie, citizens
of Minnesota, being indebted to residents of this state in
the sum of $150,000, and the further sum of $40,000 to
non-residents, including $10,000 to citizens of Wisconsin,
executed, pursuant to Chapter 148, Laws 1881, and
known as the 'Insolvent Law,' an assignment of all their
firm property, of which real estate worth $60,000 was sit-
uated in Wisconsin. Prior to the execution of this as-
signment the defendant, also a citizen of this state, a cred-
itor of the firm, had acquired an attachment lien upon the
Wisconsin *real estate.* Other creditors, citizens of Wis-
consin, had also, prior to the assignment, acquired at-
tachment liens on the same property. Defendant has never
become a party to the assignment, nor participated in its
benefits. Our 'insolvent law' is essentially different from
the statute of Wisconsin regulating assignments for the
benefit of creditors, and in some respects directly in con-
flict with it. *Held, first,* that the courts of this state have
no right to enjoin defendant from enforcing his attach-
ment lien on the real property in Wisconsin, although the
execution of the assignment might, under our statute,
have dissolved such an attachment in this state; *second,*
that, even if they had the power to do so, they ought not,
in the use of a sound discretion, to exercise it in this
case, where the only effect might be to enable non-resident
creditors to step in and appropriate the attached prop-
erty."

It will be seen that one of the grounds for upholding the
attachment was that the effect might be to enable non-
resident creditors to step in and appropriate the attached
property, to the injury of the Minnesota creditor. In this
respect the case is governed by the principle announced
by us in *Happy v. Prickett, supra. King v. Cross, supra,*
involved the question whether an assignment made in
Massachusetts under an insolvent law, not so completed as

to divest the assignor of his control over the property, would pass title to property in Rhode Island, as against a citizen of Rhode Island. The court held it would not, because the assignment was not perfected so as to divest the assignor of his title until after the attachment was made, and because the assignment was involuntary, and such insolvency proceedings did not have extra-territorial operation, and because it was sought to recognize a foreign law to the prejudice of a domestic creditor. *Proctor v. Bank, supra,* was this case: A Massachusetts bank had sued a Massachusetts firm in the state of Ohio, and garnished certain debts owing to the firm there. Learning that the firm was about to make an assignment for the benefit of creditors, it sold its claims to a New York bank, passing all its interests to that bank. The assignee sued the Massachusetts bank, in the Massachusetts courts, to enjoin the prosecution of the Ohio suit. The relief was denied solely upon the ground that the sale, though made with intent to defeat the operation of the assignment, which intent was known to the New York bank, was yet an absolute sale, by which the defendant had parted with all its interest in the claim, and therefore no longer had any control over the Ohio litigation. The court, of course, had no jurisdiction, and could acquire none, over the New York corporation. As to *Cole v. Cunningham, supra,* the supreme court, in *Barnett v. Kinney,* 147 U. S. 476 (13 Sup. Ct. 403), treat it as supporting the proposition that a foreign assignment may, and properly should, receive recognition as against foreign creditors, but denied effect as against local creditors, the court saying:

"Great contrariety of state decision exists upon this general topic, and it may be fairly stated that, as between citizens of the state of the forum, and the assignee appointed under the laws of another state, the claim of the

former will be held superior to that of the latter by the courts of the former; while, as between the assignee and citizens of his own state and the state of the debtor, the laws of such state will ordinarily be applied in the state of the litigation, unless forbidden by, or inconsistent with, the laws or policy of the latter."

We have already referred to what was held by the supreme court of the United States in the case of *Security Trust Company v. Dodd, Mead & Co., supra.* In *Barnett v. Kinney,* 147 U. S. 476 (13 Sup. Ct. 403), the point made by the appellants that it would violate the constitution of the United States to deprive them of the rights acquired under the attachment, and which point is decided in favor of the contention of the appellant in *Sturtevant v. Armsby Co., supra,* was passed upon. In *Barnett v. Kinney,* a citizen of Utah, who owned some property in Idaho, executed and delivered, in Utah, an assignment for the benefit of his creditors. Thereafter the property in Idaho was attached at the suit of Minnesota and Nebraska creditors. The territorial supreme court sustained the attachments, holding that the Utah assignment was invalid so far as related to property in Idaho. And in arriving at this conclusion the court said that, in considering the effect of the assignment, no other principle could be applied where a non-resident of the territory was challenging its operation than there could be where it was contested by a citizen of the territory, for that would be to withhold from the non-resident suitor privileges and immunities granted to its own citizens. *Barnett v. Kinney,* 2 Idaho, 706 (23 Pac. 922). The cause was appealed to the supreme court of the United States. The appellee's counsel contended before that court that "There can be no distinction in administering the law, and no preference can be given or right denied to

the citizen of one state over the citizen of another state or territory of the United States;" citing and relying, among other authorities, upon *Paine v. Lester,* 44 Conn. 197 (26 Am. Rep. 442), and *Hibernia National Bank v. Lacombe,* 84 N. Y. 367 (38 Am. Rep. 518), the two cases which were cited in *Sturtevant v. Armsby Co., supra.* The supreme court having stated the ruling of the territorial court, and overruled objections as to the effect of the assignment in other particulars, took up the objection, as stated by the supreme court, "that a nonresident could not make an assignment, with preferences, of personal property situated in Idaho, that would be valid as against a nonresident attaching creditor, the latter being entitled to the same rights as a citizen of Idaho." On this subject the court said:

"No just rule required the courts of Idaho, at the instance of a citizen of another state, to adjudge a transfer, valid at common law and by the law of the place where it was made, to be invalid, because preferring creditors elsewhere, and, therefore, in contravention of the Idaho statute and the public policy therein indicated in respect of its own citizens, proceeding thereunder. The law of the *situs* was not incompatible with the law of the domicil."

The supreme court then cited and approved several decisions bearing upon this subject, the first of which is *Halsted v. Straus,* 32 Fed. 279. Considering the effect of a New York assignment to pass title to property in New Jersey, as against foreign attaching creditors in the latter state, it was there said:

"The execution of foreign assignments in New Jersey will be enforced by its courts as a matter of comity, except when it would injure its own citizens; then it will not. If Deering, Milliken & Co. were a New Jersey firm, they could successfully resist the execution of the assignment in this case."

*Bentley v. Whittemore,* 19 N. J. Eq. 462 (97 Am. Dec. 671), was cited and followed in *Halsted v. Straus.* In that case the court of errors and appeals of New Jersey considered the question whether an assignment made under the laws of New York, which conflict in substantial particulars with the New Jersey laws upon that subject, would operate to pass title to real property in New Jersey, as against foreign creditors. The conclusion reached was summed up in these words:

"The true rule of law and public policy is this: that a voluntary assignment made abroad, inconsistent, in substantial respects, with our statute, should not be put in execution here to the detriment of our citizens, but that, for all other purposes, if valid by the *lex loci,* it should be carried fully into effect."

*May v. First National Bank,* 122 Ill. 551 (13 N. E. 806), is next referred to and quoted from. There an assignment made in New York was held to convey real property in Illinois as against a Massachusetts creditor. In that case protection to a foreign creditor was again claimed under the "privilege and immunity" clause of the Federal constitution, and again *Paine v. Lester* and *Hibernia National Bank v. Lacombe* were cited in support of the claim. The court said:

"But in the broad extent that in no case should a court hold to a distinction, in pursuing legal remedies, between citizens of its own state and those of another, we are not ready to yield assent thereto. It is not a proposition warranted by the authorities. . . . An assignment giving preferences, though made without the state, might, as against creditors residing in this state, with some reason, be claimed to be invalid, as being against the policy of the statute in respect of domestic creditors,—that it was the policy of the law that there should be an equal distribution with respect to them. But as the statute has no application to assignments made without the state, we do

no see that there is any policy of the law which can be said to exist with respect to such assignments, or with respect to foreign creditors, and why non-residents are not left free to execute voluntary assignments, with or without preferences, among foreign creditors, as they may see fit, so long as domestic creditors are not affected thereby, without objection lying to such assignments that they are against the policy of our law. The statute was not made for the regulation of foreign assignments, or for the distribution, under such assignments, of a debtor's property among foreign creditors."

*Frank v. Bobbitt,* 155 Mass. 112 (29 N. E. 209), was commented upon as follows:

"In *Frank v. Bobbitt,* 155 Mass. 112, a voluntary assignment made in North Carolina and valid there, was held valid and enforced in Massachusetts as against a subsequent attaching creditor of the assignors, resident in still another state, and not a party to the assignment. The supreme judicial court observed that the assignment was a voluntary and not a statutory one; that the attaching creditors were not resident in Massachusetts; that at common law in that state an assignment for the benefit of creditors which created preferences was not void for that reason; and that there was no statute which rendered invalid such an assignment when made by parties living in another state, and affecting property in Massachusetts, citing *Train v. Kendall,* 137 Mass. 366. Referring to the general rule that a contract, valid by the law of the place where made, would be regarded as valid elsewhere, and stating that 'it is not necessary to inquire whether this rule rests on the comity which prevails between different states and countries, or is a recognition of the general right which every one has to dispose of his property or to contract concerning it as he chooses,' the court said that the only qualification annexed to voluntary assignments made by the debtors living in another state had been 'that this court would not sustain them if to do so would be prejudicial to the interests of our own citizens or opposed to public policy.' And added: 'As to the claim of the plaintiffs that they

should stand as well as if they were citizens of this state, it may be said, in the first place, that the qualification attached to foreign assignments is in favor of our own citizens as such, and in the next place, that the assignment being valid by the law of the place where it was made, and not adverse to the interests of our citizens nor opposed to public policy, no cause appears for pronouncing it invalid.' "

The supreme court held that the Utah assignment operated to pass title to property in Idaho as against non-residents of Idaho, and reversed the judgment of the territorial court. *Paine v. Lester,* 44 Conn., *supra,* was decided on the same grounds as *Sturtevant v. Armsby Co.* The case of the *Hibernia National Bank v. Lacombe, supra,* supports the contention of the appellants. We think, however, that the supreme court of the United States and the cases referred to in the case of *Barnett v. Kinney* is in opposition to the contention made by the appellants, and lays down a better rule, and that foreign creditors should not be accorded the same rights as local creditors simply because they have availed themselves of the process of the courts of our state to seize the property of the insolvent within the state. We do not think that there is any substantial difference between the assignments of real and personal property, and we so intimate in *Happy v. Prickett, supra.* The rights of local creditors prevail against foreign assignments, and in addition, as said in *Security Trust Company v. Dodd, Mead & Co., supra,* such assignments must not conflict with the laws or public policy of the state in which the assignment is sought to be enforced. If it does it is a good reason for refusing to extend the comity of the state in favor of such conveyance. This is conceded by the respondent in his comment upon the case of *Warren v. Jaffray.*

Does the deed of assignment in this case, under the laws of this state, convey the interest of the debtor in the real estate in controversy? Does the absence of the notarial seal to the certificate of acknowledgment render the assignment of no effect as a conveyance of real estate in this state? The laws of New York bearing upon this subject, which were introduced in evidence, simply provide that the assignment shall be acknowledged, but prescribe nothing as to the form of acknowledgment or as to whether it should be under seal. No seal need be attached to an acknowledgment unless the statute specifically provides for it. The statutes of this state require a notary when he signs any instrument officially, except an oath, to be used in any court of this state, to affix his official seal. § 249, Ballinger's Code. A certificate of acknowledgment must be substantially in the form prescribed by § 4533, Ballinger's Code. The form of the certificate to the assignment in question is substantially the same required by this section, with the exception, the words or equivalent words, "Given under my hand and *official* seal," are not in the certificate.

"Deeds or conveyances of lands, or of any estate or interest therein situated in this state, may be executed or acknowledged in any other state or territory of the United States in the form prescribed for executing and acknowledging deeds within this state, and the execution thereof may be acknowledged before any person authorized to take acknowledgments of deeds by the laws of the state or territory wherein the acknowledgment is taken, or before any commissioner appointed by the governor of this state for such purpose." § 4527, Ballinger's Code.

"In the case provided for in the preceding section, unless the acknowledgment be taken before a commissioner appointed by the governor of this state for that purpose, or by the clerk of the court of record of said state or territory, or by a notary public or other officer having a seal

of office, then such deed shall have attached thereto a certificate of the clerk of the court of record, under the seal of said county or district, or a certificate of any other proper certifying officer of said district or county, within which said acknowledgment was taken, that the person whose name is subscribed to the certificate of acknowledgment was at the date thereof such officer as he therein represents himself to be, that he is authorized by law to take acknowledgments of deeds, and that he verily believes the signature of the person subscribed thereto to be genuine." § 4528, Ballinger's Code.

It is claimed that as there is no official seal of the notary, and no certificate of a clerk of a court of record that the notary has no seal and was a notary, and of the genuineness of the signature of the notary, as required in § 4528, *supra*, that, therefore, there is not such an acknowledgment as required by our laws. The deed of assignment has been properly acknowledged, but there is a defective certification of that acknowledgment. The fact that an instrument is defectively acknowledged, or that the certificate of acknowledgment is defectively certified, will not affect its operative force, at least in equity, as against the grantor or one who is not a *bona fide* purchaser. Real estate of a partnership, in equity is regarded as personal estate, so far as the payment of debts. *State ex rel. Bogey v. Neal, ante,* p. 391 (69 Pac. 1103). Under our statutes an action to quiet title may be maintained by one having merely an equitable title. *Jackson v. Tatebo,* 3 Wash. 456 (28 Pac. 916). In such a suit equity has power to grant relief as the facts in the case require. *Jackson v. Tatebo, supra; Dormitzer v. German Savings & Loan Society,* 23 Wash. 132 (62 Pac. 862). In such a suit the superior title, whether legal or equitable, prevails. § 5508, Ballinger's Code. A creditor buying in his debtor's real estate at an execution sale on his own judgment is not a

*bona fide* purchaser without notice, and takes the estate subject to all equities. *Hacker v. White*, 22 Wash. 415 (60 Pac. 1114, 79 Am. St. Rep. 945). Even if we concede that it was necessary to affix the notarial seal to the certificate of acknowledgment, or to have it certified as required in § 4528, *supra*, in order to effect a conveyance of real estate in this state, the assignee has the superior equitable title, and under the positive law of this state his title must prevail. The deed of assignment provides for a just and equitable distribution of the debtor's property among all his creditors, and the law of New York in this respect is substantially the same as our own touching such assignments. We think it accords with the law and public policy of this state to uphold the assignment to the respondent. We have been unable to find from the evidence that the assignment was fraudulent.

The judgment of the court is therefore affirmed with costs to the respondent.

REAVIS, C. J., and HADLEY, DUNBAR, MOUNT, FULLERTON and ANDERS, JJ., concur.