[No. 5694.   Decided December 28, 1905.]

THOMAS DOUGLAS, *Respondent,* v. BADGER STATE MINE, *Appellant.*[1]

APPEAL—BOND—CONDITIONED AS COST AND SUPERSEDEAS. Upon appeal from a judgment foreclosing a laborer's lien in the sum of $1,475 with $300 attorney's fees, in which no order of court is made fixing the amount of the supersedeas bond on appeal, an appeal bond in the sum of $200 conditioned also as a supersedeas bond, is sufficient to give the court jurisdiction of the appeal, where it is apparent from the instrument that the condition for a supersedeas was included inadvertently, and there was no attempt to employ the same as a supersedeas, and both parties treated the same as an appeal bond only (RUDKIN and DUNBAR, JJ., dissenting).

JUDGMENT—VACATION—EXCUSABLE NEGLECT. It is an abuse of discretion for the trial court to grant a motion for default and deny an application to vacate the same, where it appears that the defendant's counsel, whose residence was 200 miles from the place of trial, served by mail a motion to make the complaint more definite and certain, submitting the same with a written argument, and relied upon the opposing counsel to give notice of the disposition of the same, not knowing when the same would be heard, which notice was not given; and upon motion for default being made eleven days after the disposition of the defendant's motion, the defendant's coun-

[1] Reported in 83 Pac. 178.

sel presented an affidavit of meritorious defense and tendered an answer, and leave to file the same was denied; since the facts present a case of excusable neglect in not being represented at the hearing and answering in time, calling for a denial of the default upon terms (Fullerton, Rudkin, and Dunbar, JJ., dissenting).

Appeal from an order of the superior court for Chelan county, Steiner, J., entered March 3, 1905, in favor of the plaintiff, after a hearing on the merits, denying defendant's petition for the vacation of a default judgment.  Reversed.

*Smith & Cole,* for appellant.

*Frank Reeves* and *Reeves & Reeves,* for respondent.

Root, J.—At the threshold of this case we are confronted with a motion to dismiss the appeal, for the reason that the undertaking is conditioned as both an appeal and supersedeas bond, while in the sum of only $200.  The appeal sought to be taken was from a judgment and decree foreclosing a laborer's lien in the sum of $1,475, with $300 attorney fees and costs, upon certain mining claims of appellant.  The trial court was not asked to, and did not, fix the amount of any supersedeas.  Appellant maintains that the bond was not intended as a stay bond, but that a printed form was used containing the supersedeas clause which was unnoticed at the time.  It is not claimed by respondent that the undertaking was ever used, or sought to be used, as a supersedeas bond. In fact, it was stated in the briefs and orally at the argument, and not denied, that, after the giving of the bond, respondent's attorneys wrote to appellant's attorneys, threatening to have execution issue unless a supersedeas bond should be given.  A copy of said letter appears in an affidavit on file herein, and is undenied.  This would seem to show that both parties treated the instrument as an appeal bond only.

But it is suggested that this court must look solely to the instrument itself, and not consider extrinsic matters.  How about examining the trial court's order fixing a stay bond? Without conceding ourselves to be thus restricted, let us see

what this bond reveals when scrutinized. We find two of its parts inconsistent with each other. The penalty is stated in the sum of only $200, the lowest possible sum sufficient for *any* bond on appeal—a sum inadequate for any other than a mere appeal bond. Then, turning to another portion of the bond, we find words commonly found in an appeal and supersedeas bond. Consequently, one part indicates an intention that it should be merely an appeal bond. The other part indicates that it was intended for both an appeal and supersedeas. When a written instrument has two portions inconsistent with each other, what is the duty of a court? It is the province of the court to examine the entire instrument and, from a consideration of all its parts, give a construction that shall effectuate the evident intention of the makers of the instrument. Where one item of an instrument is absolutely inconsistent with another, it is evident that one or the other of said items was placed or left in such instrument inadvertently. It is not to be presumed that parties would intentionally incorporate in a document two irreconcilable expressions. The writing is to express the intention of the makers. It is inconceivable and unthinkable that the maker of a written instrument should intend two things, one of which is diametrically opposed to the other; or that he endeavored to express two purposes, the existence of one of which would necessarily destroy the other. As the sum of $200 could in no manner, and under no circumstances, constitute the penalty of an appeal and supersedeas bond, we must find that it was incorporated inadvertently, if we believe appellant intended the bond to be both an appeal and supersedeas.

On the other hand, if we believe appellant to have intended merely an appeal bond, then we must conclude that the supersedeas words were placed or left in the bond by mistake or oversight. In preparing a bond on appeal, into which error would an attorney be most likely to fall, that of writing the penalty only $200 when he intended it to be $3,300 or more,

sufficient to constitute both appeal and supersedeas, or in leaving in the supersedeas words when only an appeal was intended? It seems to us that the leaving in of the unnecessary supersedeas clause might be a very natural oversight; but that any attorney would write or leave in a bond the words or figures "$200," when he meant $3,300, or some larger sum, would be a very unusual mistake. Then the mention of the amount of the judgment shows plainly that there was no lack of intention to write in the amount of the bond as $200. In fact, there is nothing to show that the writing of the amount as $200 was unintentional, or an inadvertence. It is perfectly evident that appellant intended the penalty to be, and to be written therein as, $200. This being true, it follows that it could not have intended the supersedeas words, the effect of which, if given any, would be to squarely contradict the significance of the language expressing the penalty as $200. If the penalty were any sum in excess of $200, a different question would be presented. But, in this case, the fact of the bond expressing the minimum penalty fixed by the statute, in the absence of any showing of its having been used, or attempted to be used, as a stay bond, precludes the idea that it was ever intended for any purpose other than that of an appeal bond.

Respondent cites several decisions of this court in support of his motion. But in all of those cases the bonds were clearly *intended* as both appeal and supersedeas bonds; and in some, if not all, they actually performed the functions of stay bonds before being challenged here. In the first of said cases, *Pierce v. Willeby,* 20 Wash. 129, 54 Pac. 999, the trial court, upon application of appellant, fixed the amount of the supersedeas bond in the sum of $200. The appellant then executed an undertaking in the form of an appeal and supersedeas bond, making the penalty, however, only $200. A stay was actually obtained under said bond. The appellant having used it as a stay bond to supersede the judgment, this court held it to be merely a supersedeas bond, and insufficient.

to effect an appeal. In the case at bar no intention, attempt, or purpose to make or use a supersedeas bond appears. The contrary is affirmatively shown. This case is clearly distinguishable from all those cited. The motion to dismiss the appeal is denied.

· Appellant, defendant below, is a corporation, having its principal office at Seattle, King county, Washington. This action was commenced in the superior court in and for Chelan county. Appellant's attorneys reside and have their offices in Seattle. The office of respondent's attorneys is in Wenatchee, Chelan county. To the complaint, appellant interposed a motion to make more definite and certain. This motion was noticed to be heard before the superior court in Chelan county on the 5th day of December, 1904. The judge of that court presides over the superior courts of four counties, and his time is consequently divided among said counties. Not knowing whether or not the judge would be at Wenatchee on the said 5th day of December, appellant's attorneys did not go over to Wenatchee, but prepared and sent to the court a written argument upon the motion. As a matter of fact, the judge was not in Wenatchee on said 5th day of December, but arrived the next day and proceeded to consider the motion, and denied the same. Appellant's attorneys, not being informed of the court's ruling upon their motion, failed to plead over within ten days. On December 17, eleven days after the court's said ruling, respondent moved for an order of default against appellant for not pleading over. Notice of this was received by appellant's attorneys on December 19, and they forthwith prepared an affidavit of meritorious defense and tending to show excusable neglect, and also tendered an answer. These were served and filed December 20, 1904. Respondent moved to strike these, and his motion was set for hearing January 9, 1905; but the the judge again being away, the motion was not heard until January 16, 1905, at which time the answer was ordered stricken and the default entered. Findings, conclusions, and

decree were signed January 20, 1905. On January 23, appellant filed and served a petition to vacate the judgment and for a new trial. This petition was denied, and the decree confirmed on March 1, 1905. From said judgment and decree, this appeal is prosecuted.

Appellant's attorneys contend that they relied upon respondent's attorneys to notify them of the court's ruling upon the motion to make more definite. They urge that, owing to the long distance of the place of trial (some two hundred miles) from their home, and the uncertainty of the judge being there, it was unnecessary for them to be personally present; that they had faith in said motion and expected in any event that respondent's attorneys would notify them of the court's ruling when it should be made. They maintain that their neglect, under all of the circumstances, was only such as is contemplated and covered by the statutory provisions permitting relief from "inadvertence" and "excusable neglect." Respondent contends that it was appellant's duty to be represented, or to have arrangements made whereby it would have been promptly notified of the court's ruling. Conceding this to be correct, did the omission of appellant's attorneys constitute neglect that was inexcusable? That was the question presented to the trial court, and now presented for our consideration.

Appellant's attorneys say that they expected respondent's attorneys to notify them when the court should come and pass on the motion; that they expected this as an act of courtesy such as ordinarily obtains among practitioners. Respondent contends that his attorneys were required by no statute, rule of court, or law to notify appellant's attorneys. This is perhaps true; but if attorneys recognize no obligations toward brother attorneys except such as are imposed by statute, rule of court, or law, what becomes of that professional courtesy which has been cherished and observed by the profession from time immemorial? If an attorney extends to another nothing but what that other may demand as a strict matter of

law and right, there is no courtesy about it; it is but the mere performance of a legal duty. Those engaged in the active practice of the law must encounter many difficulties and annoyances at the best; and were it not for the generous acts of courtesy and kindly consideration that commonly characterize the dealings of attorneys with one another, the drudgery would often become well nigh intolerable.

In the case at bar, the motion of appellant was not merely for delay. It presented a substantial question. It is a serious question whether or not the ruling of the trial court was correct in denying the same. But we are not called upon to pass upon this. We merely mention it to show that it was manifestly interposed in good faith. Had respondent's attorneys notified appellant's attorneys of the court's ruling and thereby given them a chance to plead further, it would certainly have been a courteous and commendable action on their part and in accord with the common practice obtaining among attorneys. Now, because appellant's attorneys relied upon them as attorneys who would practice such courtesies, we do not think they should be humiliated and their client mulcted because of their misplaced confidence and reliance.

Now, let us look a step further. A motion for default was made within a few days. To this appellant responded with an affidavit of excuse and merits. It also tendered an answer which set forth a perfect and complete defense to respondent's complaint. All of this was done promptly and evidenced a good-faith intention to defend. When this was done, respondent, instead of withdrawing his motion for default, insisted upon it, thereby indulging in a practice which, we are glad to say, obtains only to a very limited extent in this state. The action of the trial court in sustaining the motion for default under these circumstances was not only an abuse of discretion, but was violative of both the letter and the spirit of our code which requires that all rules of practice shall, so far as practicable and where a different course is not arbitrarily prescribed by statute or established rule of de-

cision, be construed and applied so as to accomplish sub-
stantial justice.  Bal. Code, §§ 4953, 4957, 5091.

A portion of said § 4953 says that the court "may, upon
such terms as may be just, and upon payment of costs, relieve
a party, or his legal representatives, from a judgment, order,
or other proceeding taken against him through his mistake,
inadvertence, surprise, or excusable neglect."    By the im-
position of costs and reasonable terms upon appellant, re-
spondent and his attorneys could have been fully compensated
for any expenses, delay, and inconvenience occasioned them
by appellant's neglect to timely plead over.    This should
have been the course pursued by the trial court.    A portion
of said § 4957 reads as follows:    "The court shall, in every
stage of an action,  disregard any error or defect in pleading
or proceeding which shall not affect the substantial rights of
the adverse party."    Here was a defendant with an answer
presenting a just and meritorious defense; but because its
attorneys had been guilty of slight neglect, its defense is
excluded.    The statutory provision regarding "excusable
neglect," was enacted for some purpose.    That attorneys are
not infallible, but subject to the same shortcomings that char-
acterize humanity in general, is recognized by the law, and
should be by the courts.    If judges who are asked to deal
drastically with the interest of litigants whose attorneys
make slight mistakes would indulge in a little retrospection,
they would probably recall experiences in their own prac-
tice that would help to clarify their vision, encourage com-
mendable forbearance, and suggest a course better calculated
to subserve the ends of justice and right.    The function of
a court is to adjudicate the differences existing between liti-
gants and mete out that which is right and lawful, so far
as such a consummation may be approximated under the
forms of law.    They are not institutions where the rights
of suitors are to be determined by the prowess, skill, or
sharp practice of attorneys on the one side, or by the incon-

sequential errors, omissions, and oversights of the opposite counsel. Technicalities, forms, and rules must not be permitted to defeat the highest purpose of courts—the dealing out of substantial justice—unless, in a given case, an arbitrary statute or established rule of decision positively· so requires. *Westland Pub. Co. v. Royal,* 36 Wash. 399, 78 Pac. 1906; *O'Toole v. Phoenix Ins. Co.,* 39 Wash. 688, 82 Pac. 175; *Bloomingdale v. Weil,* 29 Wash. 611, 70 Pac. 94.

Our observations herein are not intended as a censure of respondent's attorneys who, owing to their standing, we are inclined to believe were actuated in their course by hasty and ill-considered counsel rather than by any deliberate purpose to ignore the ethics of the profession. But we have spoken freely for the reason that we do not wish the bar of this state to feel that there is any disposition on the part of this court to sanction the lowering of the high standard of professional ethics which has always been recognized and maintained by said bar. The traditions, ideals, and proprieties of the profession require nothing less at our hands.

The judgment of the honorable superior court is reversed, and the cause remanded with instructions to permit appellant to file its answer, and for further proceedings according to law. In lieu of the imposition of terms by the trial court, it is ordered that appellant do not recover costs on this appeal.

MOUNT, C. J., HADLEY, and CROW, JJ. concur.

FULLERTON, J. (dissenting)—I concur in that .part of the foregoing opinion which holds the bond sufficient to sustain the appeal. I do not do so, however, on the ground that this bond can be distinguished from others that this court has held insufficient, but because I believe the cases announcing the doctrine that a bond conditioned both as an appeal and supersedeas bond, but sufficient in amount only as an appeal bond, is not good as either, are wrong in principle and should be overruled. In my judgment, a bond sufficient in condition and amount as an appeal bond is good as an appeal bond

regardless of any conditions looking to the stay of the judgment it may contain. Notwithstanding the statute says they may be included in one instrument, the appeal bond and stay bond are inherently distinct. The appeal bond must be given in any event. It is made necessary by statute in order to perfect the appeal. The appeal cannot be heard without it. But the stay bond may be given or not as the appellant chooses. If he wishes to prevent execution of the judgment pending the appeal, he may do so by giving a stay bond as provided by statute. But his rights on the appeal are in nowise affected by his failure so to do. Every question open to him will be heard and adjudged whether he gives it or does not give it. Moreover these bonds may be given in separate instruments. The sureties need not be the same on each. And when separately given the one is not affected by the other. Indeed no court, so far as I have been able to ascertain, has ever held that an appeal bond sufficient in itself to perfect the appeal and good if standing alone, is rendered nugatory by the filing of an insufficient stay bond. Why then should the appeal bond be affected by the stay bond when both are included in the same instrument? I confess my utter inability to find any reason for the distinction, and finding none I believe the holdings of the court to the effect that there is a distinction are wrong.

I must, however, disagree with the opinion on the merits of the case. I find nothing in the record which warrants this court in censuring either the trial judge, or counsel for the respondent. The trial court in adjudging that the showing made by the appellant was insufficient to authorize it to set aside the judgment it had theretofore rendered acted upon a matter within its discretion which this court can set aside only for manifest abuse. It is not enough for us to say that, if we had been personally present and the question had been submitted to us, we would have decided it differently; but we must be able to say that the decision is so far wrong that a reasonable mind, acting without prejudice, and having in view

the just rights of all of the parties, would not have decided it that way. The record, in my judgment, does not enable us to do this. Personally, I cannot even hold that it ought to have been decided differently.

In my opinion, therefore, the motion to dismiss should be overruled and the judgment affirmed.

RUDKIN, J. (dissenting)—In *Pierce v. Willeby,* 20 Wash. 129, 54 Pac. 999, decided more than seven years ago, this court held that a bond on appeal conditioned as both a cost and a supersedeas bond, which was not sufficient for both purposes, was not sufficient for any purpose, and dismissed the appeal. In that case the trial court fixed the amount of the supersedeas in the sum of $200, and a bond in that amount conditioned both as a cost and a supersedeas bond was filed. Such a bond was declared insufficient, and I am unable to distinguish that case from the case at bar. An appeal bond comes before this court without issues and without proofs. We must ascertain the intention of the parties and determine the character of the instrument from what appears within the four corners of the bond. The appeal bond before us is clearly both a cost and super- sedeas bond, and complies with all the requirements of the statute governing such bonds, except as to the amount. The argument of the majority, based on the amount of the bond, would apply with equal force in the case of *Pierce v. Willeby.* The latter case has been followed in numberless cases since the decision was rendered, and it should be fol- lowed now or overruled. I do not feel called upon to approve or criticize the ruling in that case. It relates exclusively to a question of practice, and so long as the rule established is uniform, it is as easy to comply with the statute as there con- strued as with any other construction this court might now adopt. However, if the court desires to overrule *Pierce v. Willeby* and the long line of cases following it, I will inter- pose no objection; but they should not be followed in one case and distinguished away in the next.

I also dissent from what is said on the merits. The majority concede that the appellant was in default, and that the only excuse for such default was the failure of counsel for respondent to notify counsel for appellant of the ruling of the court on a motion to make the complaint more definite and certain. The majority further concede that counsel for respondent were under no legal obligation to give such notice. The trial court held that this was not a case of excusable neglect, and denied an application to open the default and for leave to answer. Applications of this kind are addressed to the sound discretion of the trial court, and I am not prepared to say that an abuse of discretion is shown here. Professional courtesy, undefined and unregulated by law, is a very uncertain guide, and cannot safely be adopted as a rule of practice in the courts. In the broad sense in which that term is discussed in the majority opinion, it belongs in the domain of morals rather than of law.

I think the appeal should be dismissed or the judgment affirmed.

DUNBAR, J., concurs with RUDKIN, J.