Fox *v.* Adams & al.

Fox *vs.* Adams & *al. and trustees.*

Where a general assignment of property, for the benefit of all the creditors of an insolvent debtor, was made *May* 25, and a further instrument was executed *June* 2, giving priority to a large amount of debts due to the United States; it was held that the assignment still took effect from the first date, unaffected by any events intervening between that and the second agreement.

An assignment in trust for the benefit of creditors is not vitiated by a condition that the creditors shall accept the provision made for them in full of their respective demands.

The time limited in such assignment, for creditors to become parties to it, may be so short or so long as to justify a presumption of fraud, and thus defeat its operation.

Such an assignment, by an insolvent debtor in another jurisdiction, will not be permitted to operate upon property in this State, so as to defeat the attachment of a creditor residing here.

The questions in this case, which was *assumpsit* against the house of *Adams & Amory,* were raised upon the facts disclosed in the answers of *Isaac Emery,* one of the persons summoned as their trustees, in a foreign attachment.

It appeared that *Adams & Amory,* merchants in *Boston,* having become insolvent, made an assignment of their property, *May* 25, 1826, to *Ellery, Sargent* and *Brooks,* in trust for the benefit of the assignees, and such other of their creditors as should become parties to the assignment within seventy days then next. The proceeds of the property, after paying certain preferred creditors, sureties on bonds, and indorsers, was to be applied *pro rata,* to the other creditors, parties to the indenture ; and a release was inserted, of all demands against the principal debtors.

On the second day of *June* 1826, a further agreement was indorsed upon the same indenture, and declared to be a part of the same, reciting that the amount due to the United States, upon cus-

tom-house bonds was intended to be inserted in the annexed schedule of preferred debts, but could not previously be ascertained ; but was now inserted, in the amount of upwards of 90,000 dollars, and declared to be entitled to preference in payment, over all other debts.

On the sixth day of *June* a further indenture was executed, transferring the property and the whole trust from *Ellery, Sargent* and *Brooks*, to *Jonathan Amory* and *Jonathan Amory, jun.*

On the 23d day of *May* 1826, *Emery*, the trustee, being indebted to *Adams & Amory* twenty five hundred dollars, for cash advanced on consignments made and expected, and they having his goods in their hands, on consignment, to the value of a thousand dollars, they drew on him for twenty five hundred dollars, at sixty days sight, in favor of *Isaac Adams* of *Newburyport*. On the 25th of *May* the drawers inclosed this draft to *Emery*, requesting him to accept it and hold it subject to the order of the payee, or till he should hear from them again ; and he received and accepted the draft on the same day. On the 23d or 30th of *May*, they wrote to *Emery*, informing him that his goods, which had been consigned to them, would be delivered up, on his forwarding the draft, accepted, to *Isaac Adams*, the payee. And afterwards, on the latter day, they again wrote requesting him to hand over the draft to Mr. *Deshon* of his own town, and stating that their assignees, to whom the goods had been transferred among the the rest of their property, would not deliver them to the Messrs. *Motley*, agreeably to his order, unless the draft was accepted ; of which the drawers had not yet been advised ; and did not pretend to control the business. But before he had time to comply with this request, he was summoned, on the same day, as their trustee, in the present suit. The gross amount due from *Emery* to them was included among the mass of their property assigned ; and the goods were sold for whom it might concern. Formal notice of the assignment of this debt was given by the assignees in about twenty days after the failure.

It appeared by affidavits annexed to the assignment, and disclosed by the trustees, that the property assigned was insufficient to pay the debts due to the creditors who were parties thereto.

Fox *v.* Adams & al.

*J.* and *E. Shepley*, for the plaintiff. 1. The assignment takes effect from the second of *June*, when the new agreement was executed; which acts upon the original like the codicil upon a will, postponing its operation till the date of the codicil. Even a small sum of money thus given, causes the will to pass lands acquired after its date, and before the making of the codicil. *Coppin v. Fernybrough* 2. *Bro. Ch. Ca.* 291. *Powell v. Clever, ib.* 511. *Brownell & ux. v. D'Wolf* 3. *Mason* 494. In principle this case is analogous to *Denny v. Ward* 3. *Pick.* 199. where the alteration of a writ, by inserting the name of a dormant partner, after an attachment made, though with the subsequent assent of the debtor, was held to vacate the attachment, so far as a subsequent attaching creditor was concerned.—It was in effect taking back the deed, and re-delivering it in another form, and to other uses, an attachment having intervened.

2. Courts of law will not give effect to assignments, whether by operation of law, or by act of the parties, in a foreign jurisdiction, until after the debts of their own citizens are satisfied. So are the cases of ancillary administration. *Goodwin v. Jones* 3. *Mass.* 517. *Selectmen of Boston v. Boylston* 4. *Mass.* 324. *Richards v. Dutch* 8. *Mass.* 515. *Dawes v. Boylston* 9. *Mass.* 350. *Stevens v. Gaylord* 11. *Mass.* 269. *Dawes v. Head* 3 *Pick.* 128. As to the case of bankruptcy, though the English decisions are contradictory,—3. *Ves. & Beame* 97,—yet in this country the question seems at rest. 5. *Cranch* 289. 3. *Pick.* 133. That the same principle should be applied to assignments by the act of the parties themselves, is intimated in *Meeker v. Wilson* 1. *Gal.* 419; and expressly decided in Massachusetts, in *Ingraham v. Geyer* 13. *Mass.* 146. If it were not thus settled by authority, the extreme inconvenience to our own citizens, resulting from giving unqualified effect to foreign assignments, to which they might never be able to become parties if they would, ought to induce the court to withhold its sanction.

3. The assignment is void for legal fraud, as against creditors not parties to it, they not being permitted to become so, without releasing their debts. To this point it is admitted that the cases are opposed. *Widgery v. Haskell* 5. *Mass.* 144. *Harris v. Sumner* 2. *Pick.* 129.

*Leaving v. Binkerhoof* 5. *Johns. Chan. Ca.* 329. *Hyslop v. Clark* 14. *Johns.* 459. *Austin v. Bell* 20. *Johns.* 442. and *Bond v. Smith* 4. *Dal.* 76. support the position. *Lippincott v. Barker* 2. *Binn.* 174. and *Halcey v. Fairbanks* reported in *Oliver's Conv.* 573. seem to the contrary; though in the latter case the arguments of *Story J.* are against the assignment, the weight of authority only being understood to turn in its favor.

It is also void because the time prescribed, beyond which creditors shall not be permitted to come in, is unreasonably short, the debtors having been merchants in very extensive business. On this point it is for the court to fix a rule for itself; and in similar cases courts usually advert to the enactments of the legislature, as affording correct analogies. Thus courts of equity adopt the periods of the statute of limitations; and in cases like the present it would seem that the period of six months, allowed by law to the creditors of deceased insolvents to bring in and prove their claims, was not an unreasonable rule. *Prevost v. Gratz* 6. *Wheat.* 497. *Ricard v. Williams* 7. *Wheat.* 117. *Hughes v. Edwards* 9. *Wheat.* 489.

4. The drawing of an order in favor of *Isaac Adams* was no assignment of the debt to him, nor was it payment of the debt, so as to prevent a suit by *Adams & Amory* for the amount against *Emery;* the draft having remained always subject to the control of the drawers, and never having been in possession of the payee. *Dennie v. Hart* 2. *Pick.* 204. *Lansing v. Gaine & al.* 2. *Johns* 300. *Leigh v. Horsum* 4. *Greenl.* 28. *Chitty on bills* 117.

*J. Holmes* argued for *Isaac Adams*, the payee; contending, first, that the draft on *Emery* having been made and accepted before the assignment, the property vested in the payee. It was not necessary that he should have cognizance of the transaction, in order to derive the benefit of the draft. 2. *Stark.* 228. 237. *Powell v. Monier* 1. *Atk.* 612. 1. *Esp.* 40. *Wynne v. Raikes* 5. *East* 520.

2. The control reserved by the drawers, was not to retain any property in the draft; but was merely a directory reservation, as the agents of the payee. After the acceptance of a bill, the drawer is the agent of the payee, to whom the property has passed. If this had

been the case of goods thus coming to the hands of the agents of the vendee, they could not have been stopped *in transitu*. *Dixon v. Baldwin* 5. *East* 175.

3. But the control reserved over the bill after its acceptance, being expressed in the alternative, the paramount right to control it belonged to *Adams*, who was both creditor and payee. It *is* preposterous to suppose that it was left at the will of the drawers, whether the payee should have the benefit of the draft. Its being left in the hands of the acceptor, gave him no property in it; but he was bound to deliver it to the payee on request, or pay him the value. Nor was it in the power of the acceptor to annul his acceptance. *Bentinck v. Dorrien* 6. *East* 200.

4. At the time of the service of the plaintiff's writ the defendants had no existing right of action against *Emery*, which their creditors could attach. They had previously parted with every shadow of control over the draft, as the agents of the payee, by requiring the acceptor to deliver it to *Deshon*. This process is nothing more than a direction to the trustee or debtor not to pay over to his creditor. But what could *Emery*, at the moment of service, have paid over to *Adams & Amory*, after having accepted their draft in favor of *Adams*, and thus become his debtor? The drawers could no longer countermand the direction thus given, and therefore had no longer a claim against *Emery*. Even before acceptance, the bill was an assignment of the debt, being given for the whole amount of the fund. *Mandeville v. Welch* 5. *Wheat.* 277.

*N. Emery*, for the assignees. Enough appears in the assignment to show that it was made to the honest creditors of the assignors; and if it amounts to a preference, they had a right to make it. So far as the United States were concerned, the assignment only speaks the language of the law, in giving them a priority to all other creditors. Such transactions, having their foundation in mercantile integrity and good faith, it is the interest of all communities to support, and to facilitate in their intended effects.

The indorsement of the second of *June*, so far from being a new contract, was merely in the nature of a further assurance, previously

covenanted to be given, to carry the original agreement into full effect. It changed no rights then vested; it bears no analogy to the codicil of a will, which is liable to perpetual variations, and is ambulatory, so long as the testator lives; but it is an exposition of the previous contract, declaring what was the intent of the parties in making it; and it may well be supported as such, in perfect consistency with the symmetry of the law.

If the assignors had a right to make the assignment, and even to pass the property absolutely and instantly to *bona fide* creditors, preferring whom they would; they had a perfect right to indicate that preference by any rules and conditions they might choose to adopt, and to fix at pleasure the time beyond which certain creditors should be excluded. In this case, however, the period of seventy days was amply sufficient for vigilant creditors in all parts of the United States. The case of deceased insolvents furnishes no correct or safe analogy, as to the time of proving claims, there being an essential difference between the acts to be performed in the two cases, and also between the modes of performing them.

WESTON J. delivered the opinion of the Court at the ensuing term in *Cumberland*.

The first question presented in the disclosure of *Isaac Emery* is, whether, before the service of the trustee process upon him, there had been any assignment to *Isaac Adams*, of the debt due from him to the principal defendants. An order was enclosed to him from the defendants, in a letter dated *May* twenty third, 1826, for twenty five hundred dollars, in favor of *Isaac Adams*, and requesting him to accept the order, and to hold it for the said *Isaac*; or until he should hear from them again. This order, *Emery* says, he accepted on the day he received it, which was the twenty fifth of *May*. On the twenty third of the same month, he says he was indebted to the defendants in the sum of twenty five hundred dollars; but that they had, at the same time, merchandize of his consigned to them to the amount of one thousand dollars. From the whole disclosure it is to be inferred that his acceptance for the whole amount, was upon the

Fox *v.* Adams & al.

condition that these goods should be returned to him, or should be subject to his order. Upon being interrogated whether the defendants, in their letters of the twenty third, or thirtieth of *May*, or either of them, informed him that his goods to the amount of a thousand dollars should be delivered as he should direct, if he accepted the order, he replies generally that they did, if he would forward it to *Isaac Adams*. He does not designate which of these letters contained this proposition, but as the letter received on the thirtieth contained a different one, we may fairly understand that it was contained in the letter of the twenty third. But as *Emery* did not comply with this proposition, it may be presumed that he was unwilling to do so, until assured of his goods. Prior to the thirtieth, he had directed these goods to be delivered to the Messrs. *Motley*, which the assignees of the defendants had declined to do, unless the order was accepted. By the letter received on the thirtieth, he was directed to deliver the order to *Deshon*, as the condition upon which he was to receive his goods. The twenty five hundred dollars were advanced by the defendants to *Emery*, on goods sent, and to be sent, by him to them, to be sold in the usual course of transacting commission business for their reinbursement. He was deficient only fifteen hundred dollars in the amount of goods forwarded, and he was therefore under no obligation to answer the defendants' order for twenty-five hundred dollars, until his goods were restored. Taking the whole disclosure together, the negotiation was kept open between them, in regard to this condition, until *Emery* was served with process in this action. Upon this ground therefore, the assignment to *Isaac Adams* does not appear at that time to have been complete and effectual. Still less does it appear that any assignment was made to him for his own use and benefit, or upon any valuable consideration paid by him. His appearance was merely nominal. Nothing was done by his personal agency. *Emery* held no communication with him. This course may have been taken by the defendants, merely to deposit funds in his hands, subject to their order. They manage the business throughout; and finally direct the order to be placed in the hands of *Deshon*. That the defendants, notwithstanding the order in favor of *Isaac Adams* of the twenty third of *May*, still considered

the debt as due from *Emery* to them, is apparent from the fact that in their assignment of the twenty fifth of the same month to *Ellery* and others, a copy of which is made part of *Emery's* disclosure, the debt due from him is specifically included. If *Isaac Adams* had been the holder of the order, and the acceptance had been complete, prior to the service of this process, the defendants could not have done any thing to prejudice his rights. But he does not appear ever to have been the holder of the order; nor does it sufficiently appear that the acceptance had then become effectual.

A question of more importance remains in the case, and one equally applicable to both the trustees; whether they ought to be discharged by reason of the assignment to *Ellery* and others, of the twenty fifth of *May*. It is objected that the assignment ought not to have operation until the second day of *June*, after the service of the trustee process, because on that day, custom house bonds, to the amount of nearly one hundred thousand dollars, were provided for out of the property assigned. If the assignment of the twenty fifth of *May* were liable to no legal objection, it might remain good, and from that date, notwithstanding the provision subsequently made for the custom house bonds, by the assent of all the parties to the instrument.

It is further objected that the assignment contains conditions, which the defendants had no right to impose upon their creditors, and that it is therefore void in respect to such as have not expressed their assent, by becoming parties thereto. Those conditions are, that the creditors should accept the provision made for them in full of their respective demands, and should thereupon release the defendants therefrom; and that no creditors were to have the benefit of the property assigned, who did not become parties to the instrument within seventy days. With regard to the condition requiring a release, *Story J.* in the case of *Halcey v. Fairbanks*, upon a full consideration of the authorities, deduces that they support the validity and legality of such a stipulation, although he declares, that if the question were entirely new, the inclination of his mind would be strongly against it. In that case the same learned judge states that the time limited for creditors to become parties to the instrument, may be so short or so long, as to justify a presumption of fraud,

Fox *v.* Adams & al.

which would defeat its operation. There can be no doubt of the soundness of this opinion. The law requires in all transactions the most perfect good faith. If therefore an instrument, purporting to be made for the benefit of all the creditors of the party making the assignment, does not allow them a reasonable and sufficient time to avail themselves of its provisions, its apparent fairness is merely specious and delusive. So also it is liable to objection, if the time be unreasonably extended, and the adjustment of the business, and the claims of the creditors, thereby unnecessarily delayed. From the property assigned, and the debts and credits of the defendants, detailed in the schedules attached to the assignment, it appears that their business was much extended, and that they were engaged in foreign commerce. They had many creditors, and were indebted in an amount approaching four hundred thousand dollars. The residence of their creditors does not appear ; but we know they were not confined to their own State; and as they were numerous, and the dealings of their house extensive, it would take some time to notify them, and to afford a fair opportunity to all, who chose to do so, to come into the arrangement. It is difficult to account for the fact that so small a proportion in number and amount executed an instrument apparently equitable, and which proffered advantages only to such as thus expressed their assent, if the creditors generally had notice within the period limited, and a reasonable time to make proper inquiries into the state and condition of the concerns of the defendants. Under these circumstances, we are strongly inclined to the opinion that the shortness of the time constitutes a sufficient objection to the validity of the assignment against such creditors, as have not expressly assented thereto ; but we do not place the decision of the cause upon this point ; but upon the ground that a general assignment made by an insolvent debtor in another jurisdiction, shall not be permitted to operate upon property in this State, so as to defeat the attachment of a creditor residing here.

In foreign administrations, to which proceedings here are made ancillary, funds thus collected within this jurisdiction are held subject to the claims of our own citizens, to whom payment is to be made

## The State v. Kittery.

in full or in part, according to circumstances. 3. *Pick.* 128, and the cases there cited.

In the case of *Le Chevalier v. Lynch & al. Doug.* 170, the assignees of a bankrupt were not permitted to defeat a process of foreign attachment made after the bankruptcy; although the policy of the bankrupt system is much favored in England, and the attachment was made in a colonial jurisdiction. The bankrupt law of a foreign country does not legally operate to transfer property in the United States. 5. *Cranch* 289.

Nor can property in this State be put out of the reach of creditors here, by the insolvent laws of another State. Comity between States is not thus to be extended, to the prejudice of our own citizens. The case of *Ingraham v. Geyer,* 13. *Mass.* 146. cannot be distinguished in principle from the one before us. There, an assignment made in Pennsylvania, resembling the one in question, except that four months instead of seventy days, were allowed to creditors to accede to its provisions on their part, was not permitted to defeat a foreign attachment made in Massachusetts, by a creditor resident there; although the trustee had notice of the assignment, and set it forth in his disclosure. *Trustees charged.*