CYRUS HAPPY, *Respondent*, v. HARRIS E. PRICKETT, *Defendant*, CHARLES N. TRAVOUS *et al., Appellants*.

INTEREST — OPEN ACCOUNT.

Interest at the legal rate begins to run on an open account for services rendered from the date of full performance, at which time the right to compensation fully accrued.

ASSIGNMENT FOR BENEFIT OF CREDITORS — FOREIGN ASSIGNEE — RIGHTS OF RESIDENT CREDITORS.

An assignment for the benefit of creditors made in another state in accordance with its statutes, while passing title to the assignor's realty in this state, does so subject to the rights of creditors resident in this state to enforce claims against the assignor by suit and attachment against his property in this state.

SAME — ATTACHMENT — INTERVENTION BY FOREIGN ASSIGNEE.

A foreign assignee of an insolvent estate has the right to intervene, in a local attachment suit brought by a resident creditor against the assignor's realty in this state, for the purpose of protecting the estate against any illegality or fraud in the claims.

Appeal from Superior Court, Spokane County.—Hon. WILLIAM E. RICHARDSON, Judge.  Reversed.

*A. G. Avery* and *Buck & Craven,* for appellants.

*W. W. Hindman,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—On December 14, 1896, defendant Harris E. Prickett and J. A. Prickett, copartners, were engaged in banking in the state of Illinois, and on that date made an assignment of their property, for the benefit of all their creditors, to the appellants, who duly qualified and now are the assignees of said estate.  The assignment was duly recorded in the proper county in the state of Illinois, and on

December 21, 1896, was recorded in the office of the auditor of Spokane county, Washington. At the time said assignment was made, defendant Harris E. Prickett, one of the assignors, was the owner of record of several parcels of real estate in Spokane county. In July, 1899, plaintiff (respondent here) commenced an action against defendant Harris E. Prickett to recover the sum of $4,950, alleged to be due on an open account for legal services between January 1, 1891, and December 14, 1896, which was before the making of the assignment, and attached the real estate which is the subject of this controversy. Service was by publication. Upon the commencement of the action the appellants filed their petition in intervention, denying the indebtedness, pleading payment thereof, setting up the statute of limitations, setting up the matters and things heretofore stated in regard to the assignment, and praying for a dismissal. Motion to strike the petition in intervention and for judgment was made by the plaintiff and overruled; after which he replied. Thereupon the intervenors made a motion for judgment on the pleadings, which was denied, and the plaintiff made another motion for judgment against defendant as prayed for in the complaint, and dismissing the intervenors. This motion was sustained and judgment was rendered in accordance therewith. The defendant did not appear in the action.

It is evident that the complaint states a cause of action, and that the statute of limitations has not run. We also think that, under the allegations of the complaint, the plaintiff was entitled to interest on the account. Paragraph 4 of the complaint is as follows:

"That between the 1st day of January, 1891, and the 14th day of December, 1896, the plaintiff herein performed professional work, labor and services for said parties, under the firm names and style of J. A. Prickett & Sons, and J. A. Prickett & Son, at their especial instance

and request, which said work, labor and services were reasonably worth the sum of $7,600."

And paragraph 5 reads:

"That said parties have not paid the same, or any part thereof, except the sum of $2,650, and there is now due, owing and wholly unpaid to this plaintiff, the sum of $4,950, together with interest thereon from the 14th day of December, 1896, to date at the rate of 8 per cent. per annum."

According to the complaint the services had all been performed and the money for the same was due on the 14th day of December, 1896. This being true, interest would run on the amount due at the legal rate from the date it became due.

This brings us to the principal question in the case, viz., did the deed of assignment made in Illinois in accordance with the statutes of Illinois pass the title to real property in this state belonging to the assignors, as against local creditors in this state? It is insisted by the appellants that a foreign voluntary assignment has the same effect as any other conveyance; that it carries with it all the force and effect of an ordinary deed or mortgage; that there is no distinction between general assignments and other conveyances of real property; and that there is a distinction between voluntary assignments made under the laws of foreign states and involuntary assignments made under bankrupt laws; while it is the contention of the respondent that the law of Illinois under which this assignment was made is, in substance, an involuntary insolvency act; that the assignee is subject to the orders and control of the court in that state, and that, although the assignment was voluntary in the sense that it was done of the free will of the assignors, still it receives its force and effect by virtue of the laws under which it was made; and that the assignees, therefore, have no greater rights

in this state than foreign administrators or receivers.   If
the assignees of these insolvent debtors have any right to
enforce their claims against the estate of the assignors in
this state, it is a right which exists not strictly in a legal
sense, but by reason of the comity existing between the dif-
ferent states of the Union.   As we understand the usage,
however, this comity only extends to citizens of other states
rights which do not interfere with the enforcement of the
legal privileges of citizens of this state, and rights the
enforcement of which would not place citizens of this state
in a more unfavorable position in attempting to enforce
their own rights than they would have been in had not such
comity been extended.   Making the application to the case
in point, the respondent here certainly had a legal right to
recover his debt by the adequate remedy which he sought
by suit and attachment; and comity should not extend so
far as to deprive him of this plain and adequate remedy,
and compel him to seek the aid of a foreign tribunal to
protect his interests.   Many cases are cited by the re-
spondent to support this contention.   It is insisted by the
appellants, however, that none of them are in point, with
the exception of *Heyer v. Alexander,* 108 Ill. 395, which,
it is conceded, decided that a non-resident debtor having
real estate in the state of Illinois could pass the same to
his assignee by deed of assignment executed in his state,
where such debtor had no creditors resident in the state,
but that such conveyance would not be allowed to with-
draw the debtor's assets and means from the state of Illi-
nois to the detriment or injury of domestic creditors, and
that it was subject to the claims of resident creditors where
the property was located.   The court in this case, after
quoting from *Chafee v. Fourth National Bank of New
York,* 71 Me. 514 (36 Am. Rep. 345), said:

"The doctrine is, that such a conveyance is subject to the claims of resident creditors where the property is located. This we regard as the true rule. It is not just or fair that creditors in this state should be compelled to go to a foreign state to receive a *pro rata* share of the debtor's property, when they perhaps extended credit alone upon the faith of the debtor's property in this state, and to which they looked for payment."

It is said by the appellants that the case of *Chafee v. Fourth National Bank, supra,* does not sustain the view expressed by the Illinois court in *Heyer v. Alexander,* but we think it does. While the language quoted in the Illinois case as the language of the court in *Chafee v. Fourth National Bank,* was not the language of the court in that case, but was a quotation by that court from *Fox v. Adams,* 5 Me. 245, it is none the less in point; for that court, after discriminating between an assignment made by an insolvent debtor in another jurisdiction where it was assailed by an attaching creditor in another state, and an assignment made by an insolvent debtor in another jurisdiction where it was assailed by an attaching resident creditor, held that in the first instance it would defeat the attaching creditor, and that in the second instance the attaching resident creditor would defeat the assignment, and, in answer to the contention that comity required the sustaining of the foreign assignment, said: " Comity between states is not thus to be extended *to the prejudice of our own citizens."* The court in *Chafee v. Fourth National Bank,* adds:

"Such is the language of the court; and we think it clearly implies that while a foreign assignment will not be permitted to defeat the attachment of a domestic creditor, it will have that effect upon foreign creditors. The reason of the rule clearly implies this. It is the supposed duty of every government to protect its own citizens, a duty which it does not owe to foreigners."

Many cases on this proposition are cited in *Chafee v. Fourth National Bank.* It is insisted by the appellants that all of the cases excepting *Heyer v. Alexander, supra,* are cases of involuntary assignment, and that the rule in that case is different. But some of the cases are where the assignment was voluntary, and others where it was involuntary, and many of the courts hold that there is no difference in effect between a voluntary and an involuntary assignment. Thus, in *Upton v. Hubbard,* 28 Conn. 275 (73 Am. Dec. 670), a case which the appellants dismiss with the remark that it is not in point,—it was held that it made no difference with regard to the rights of the assignee in a foreign state whether the estate of the insolvent was vested in him under legal proceedings instituted against him by the insolvent, or under legal proceedings which had been had under the voluntary assignment of the insolvent himself; that the assignee was still the agent of the law, deriving from it his authority. In *Hanchett v. Waterbury,* 115 Ill. 224 (32 N. E. 194), the court construed an assignment law, substantially like the assignment law existing in Illinois now, and under which the present assignment was made, as an involuntary assignment act. It is true that in the case of *Whitman v. Mast, Buford & Burwell Co.,* 11 Wash. 318 (39 Pac. 649, 48 Am. St. Rep. 874), it was held by a divided court that an assignment for the benefit of creditors by a debtor in Minnesota of all his property, made under the provisions of the insolvency act of that state, was a voluntary assignment when made upon the motion of the debtor himself and would pass the personal property of the debtor in the state of Washington to his assignee. It may be that no sensible distinction can be made between the application of the rule to personal property and that to real estate. But in that case the contest was between the foreign as-

signees from Minnesota and a foreign attaching creditor, the attaching creditor being a resident of Missouri. So that the case can be distinguished under the rule announced in *Fox v. Adams, supra.* It is true, too, that there is some dictum in the case which supports appellants' contention; the contention of the respondent in that case being that the supreme court of Minnesota, in the case of *Jenks v. Ludden,* 34 Minn. 482 (27 N. W. 188), had construed the Minnesota statute to be in effect an involuntary bankrupt act. In that case the court said:

"Now, our insolvent law and the statute of Wisconsin, regarding assignments for the benefit of creditors, are essentially different. Our act of 1881, is, as we have repeatedly held, a bankrupt act, the assignee being in effect an officer of the court, and the assigned property being *in custodia legis,* and administered by the court or under its direction."

And, after reviewing some subsequent cases, notably *Covey v. Cutler,* 55 Minn. 18 (56 N. W. 255),—it was thought that the Minnesota court had retreated from the doctrine laid down in the *Ludden Case.* But the construction of the Minnesota cases was afterwards indulged in by the supreme court of the United States in *Security Trust Co. v. Dodd, Mead & Co.,* 173 U. S. 624 (19 Sup. Ct. 545); and that court came to the conclusion, after reviewing the *Ludden Case* and the subsequent cases from the Minnesota supreme court, that it was not the intention of the supreme court of Minnesota to overrule its prior decision to the effect that the act was practically a bankrupt or insolvency law. While this decision is not binding upon us, the distinguished character of the court must necessarily have great weight with us. But, while the supreme court of the United States sought to ascertain the construction placed upon this statute by the supreme court of Minnesota, it went further, and reviewed at large the question

in discussion here, and obliterated the distinction, so far
as the rights of the resident creditors are concerned, be-
tween assignments made under voluntary and what might
be termed involuntary statutes. This we think is the bet-
ter rule. While it is true that the assignment proceedings
are instituted voluntarily by the assignor, yet the assign-
ment is given effect by the local statutes, and the assignor
in the disposition of his property is no longer guided and
controlled by his free will; but is subjected to the opera-
tions and directions of the law of a state foreign to the
local creditors. He has subjected his will to that domin-
ion, and, to all practical intents and purposes, his acts
cease to be voluntary, and are controlled by the rules of law
prescribed by the legislature of that state, as inflexibly
as though the proceeding in its inception had been invol-
untary. The supreme court of the United States in the
case above cited, passing from the construction of the
Minnesota statute, says:

"So far as the courts of other states have passed upon
the question they have generally held that any state law
upon the subject of assignments, which limits the distribu-
tion of the debtor's property to such of his creditors as
shall file releases of their demands, is to all intents and
purposes an insolvent law; that a title to personal property
acquired under such laws will not be recognized in another
state, when it comes in conflict with the rights of creditors
pursuing their remedy there against the property of the
debtor, though the proceedings were instituted subsequent
to and with notice of the assignment in insolvency."

And it asserted that the weight of authority was to the
effect that it makes no difference whether the estate of the
insolvent is vested in the foreign assignee under proceed-
ings instituted against the insolvent, or upon the voluntary
application of the insolvent himself, alleging the rule to
be that in case of a voluntary assignment the assignment
would be respected in the foreign state, subject only to the

interest of local creditors, while in the case of an involuntary assignment it would not be regarded or protected in a foreign state, and quoting approvingly *Oakey v. Bennett,* 11 How. 33, where the court said:

"A statutable conveyance of property cannot strictly operate beyond the local jurisdiction. Any effect which may be given to it beyond this does not depend upon international law, but the principle of comity; and national comity does not require any government to give effect to such assignment, when it shall impair the remedies or lessen the securities of its own citizens. And this is the prevailing doctrine in this country."

The authorities are collated by the court in this case and many of them are exactly in point on the question involved here; and, while it is true that many of them are cases of involuntary assignment, many of them are cases of voluntary assignment, and voluntary assignments are treated as statutable assignments, and rights under statutable assignments are held to be subject to the rights of local creditors. It would not be beneficial to review all the authorities cited in this and other cases, or in the brief of the respondent, nor yet the authorities cited by the appellants, some of which sustain the doctrine contended for by them. But we think that the great weight of authority, as well as the better reasoning, is in favor of the conclusion that rights under statutable assignments will be protected in a foreign state, subject to the rights of local creditors.

We think, however, notwithstanding the authorities cited by respondent to sustain the action of the court in dismissing the intervenors in the proceedings, that they should be allowed to intervene for the purpose of testing the validity of the claim sued upon. Under the doctrine which we have announced, and under the authorities which sustain the respondent in his main contention, comity extends the aid of the state to foreign creditors, subject only to the

rights of resident creditors; and under that rule they should have a right to protect the estate against illegal claims, no matter whether fraudulent or not. If the respondent cannot make good his claim under the allegations of his complaint, and it should eventuate that his attachment should be dissolved and judgment would be denied him, the property, under the rule announced above, would be subject to the claim of the assignees. For this reason the judgment must be reversed, and the intervenors allowed to put the respondent upon his trial upon the merits of his claim.

This disposition of the case is not intended to interfere with the rights of any other local creditors, if there be any, who might now or hereafter bring actions against this estate; but we are simply deciding the questions that are presented between the respondent and the foreign assignees of these insolvent debtors.

The cause is reversed, with instructions to proceed in accordance with this opinion.

REAVIS, C. J., and FULLERTON and ANDERS, JJ., concur.