[No. 19741. Department One. April 14, 1926.]

CHARLES C. BARBO et al., *Respondents,* v. M. E. NORRIS
et al., *Appellants.*[1]

[1] CONTRACTS (169)—PLEADING—PERFORMANCE. A complaint for the
amount due on a railroad construction sub-contract sufficiently
alleges performance, as against a demurrer, where it shows that
the road-bed was constructed and completed by plaintiff under
the supervision of the railway engineers, according to their di-
rections, and that plaintiffs completed performance on or about
a certain time.

[2] JURY (8)—RIGHT TO JURY TRIAL—LEGAL AND EQUITABLE ISSUES
IN SAME ACTION. There is no right to a jury trial in an equity
case on contract involving an accounting, although a money
judgment is demanded.

[3] INTEREST (22)—TIME FROM WHICH INTEREST RUNS—ACCOUNTS.
Interest is allowable in an action on a contract from the time
the action accrued, when the amount due can be ascertained by
a mere computation.

[4] PARTNERSHIP (44-1)—NATURE OF LIABILITY—JOINT AND SEVERAL.
Partners who both sign a contract personally are both jointly
and severally liable thereon.

Appeal from a judgment of the superior court for
Skagit county, Joiner, J., entered March 18, 1925, upon
findings in favor of the plaintiffs, in an action on con-
tract, tried to the court. Modified.

*C. J. Henderson,* for appellants Norris.

*Thomas Smith* and *James G. Smith,* for appellant
Puget Sound & Cascade Railway Company.

*Peringer & Thomas,* for respondents.

HOLCOMB, J.—In this action respondents sued M. E.
Norris and Guy J. Norris, co-partners known as Norris
Brothers, and appellant Puget Sound and Cascade
Railway Company, a corporation, to recover a per-
sonal judgment against Norris Brothers for the sum

[1]Reported in 245 Pac. 414.

of $5,430.87, together with costs and attorneys fees, and for the foreclosure of a lien for work and labor against appellant railway company, for the clearing, grading, and construction of about five miles of its railroad right-of-way in Skagit county, Washington.

On May 5, 1923, appellant Norris Brothers entered into a written contract with appellant railway company, whereby Norris Brothers agreed to do certain grading upon the right-of-way of the railway company between sections 725 and 1009, in Skagit county. A copy of the contract was attached to respondents' amended complaint. By it, the railway company agreed to pay $200 per acre for the grubbing; $125 per acre for clearing and burning, thirty-seven cents per cubic yard for earth excavation, including a haul of 500 feet; $1.50 per cubic yard for loose rock excavation, and $2.50 per cubic yard for solid rock excavation; overhaul for material of over 100 feet and for more than 500 feet per cubic yard five cents; timber for culverts and iron plates, $50 per thousand feet B. M. The contract further provided that it should be performed to the satisfaction of the engineer in charge for the railway company, and he should be the sole judge of the work. By the terms of the contract the work should be finished by October 15, 1923, and, in case it was not finished on that date, Norris Brothers were to pay for each and every day the contract remained unfinished the sum of $10 per day. The contract also provided that it should not be assigned or sublet without the written consent of the engineer in charge.

After this contract was entered into between the railway company and Norris Brothers, they sublet to respondents the grading, grubbing work, and culverts, agreeing to pay $200 per acre for the grubbing; for all grading and excavation forty cents per cubic yard

(that being three cents per cubic yard more than the contract price between Norris Brothers and the railway company); loose rock one dollar per cubic yard (or fifty cents less than was to be paid by the railway company to Norris Brothers); solid rock two dollars per cubic yard (or fifty cents less than was to be paid by the railway company to Norris Brothers); overhaul five cents per yard for all over 500 feet; and lumber in culverts, including iron, $50 per thousand feet B. M.

Respondents proceeded to perform their sub-contract with Norris Brothers, without obtaining any written consent of the engineer in charge for the railway company, as provided by the contract between the railway company and Norris Brothers. Respondents remained on the work until February 5, 1924, when they left, appellant railway company insisting that they had not completed the work according to the contract when they left or abandoned it. The railway company expended $1,200 in order to complete a certain portion of the work covered by the contract with Norris Brothers, which one of the Norris Brothers, who testified at the trial, practically confessed liability for as between them and the railway company.

In the complaint in this action, respondents do not allege that the contract between them and Norris Brothers was ever accepted or consented to by the engineer in charge for the railway company. Neither do they allege that the engineer acted capriciously in refusing to accept the work or give the final certificate required in the contract.

A demurrer on behalf of the railway company on account of the above omissions was overruled by the trial court. Upon the overruling of the demurrer, appellant railway company answered, denying practically all the

allegations of the complaint, and affirmatively alleging that the contract attached to the complaint had never been performed, and asked damages for its breach in the sum of $7,470, specifying the particulars thereof. The answer also alleged that both respondents and Norris Brothers had abandoned the contract. The affirmative allegations of the railway company's answer were denied by reply by respondents.

Norris Brothers answered the amended complaint of respondents, admitting the execution of the contract between the railway company and them, and between them and respondents, and affirmatively alleged that respondents never completed the contract or performed the work according to the terms and conditions of the contract between respondents and Norris Brothers, or between Norris Brothers and the railway company; further alleged that, if the contract was not completed on October 15, 1923, or for 177 days thereafter, as they alleged the fact to be, the railway company was entitled to damages in the sum of $1,770, which they claimed was through the fault of respondents in not performing their contract as agreed; further alleged that the railway company was asking for damages for $500 for failure to complete a portion of the grading, $1,200 for failure to complete what is called the "berm" and $2,500 for extra ballast placed upon the railroad track. They demanded that the complaint be dismissed and that, in case the railway company recovered judgment against them as prayed for, they have and recover judgment against respondents for the like amount, on account of the breach of the contract on the part of respondents.

These affirmative allegations were denied by reply. It was also affirmatively alleged in the reply that any delay in the grading of the right-of-way was occasioned

by the fault of Norris Brothers in not completing the clearing as they were to do under their contract.

On appeal, to reverse the judgment against them, appellants Norris Brothers, allege error in not granting them a trial by jury on all the known questionable items; in rendering judgment against them for any amount greater than the amount of the lien; in entering judgment against them or any of the defendants in any amount; entering judgment against Norris Brothers bearing interest from March 1, 1924, and in rendering personal judgment against the appellant M. E. Norris and Guy J. Norris.

Appellant railway company assigns errors in overruling its demurrer to respondents' complaint; in overruling objections to the introduction of evidence under the complaint; in refusing to award it liquidated damages; in refusing to award damages for failure to complete the grading as provided by the contract and specifications, in the sum of $1,200; in refusing to award it judgment for $500 for grade that was washed away; in failing to give appellant credit for moneys that were paid to Norris Brothers and by Norris Brothers to respondents; in rendering judgment against appellant for the sum last mentioned; in finding that it had by its action consented to the assignment of the contract by Norris Brothers to respondents; in refusing to give it judgment against appellants Norris Brothers for the amount the evidence showed it was entitled to in order to complete the contract.

His honor, the trial judge, rendered a most able, careful and exhaustive opinion in disposing of the matters in issue between the various parties hereto, which opinion respondents chiefly rely upon as their argument. In accordance with the opinion filed in the case, the court made findings, conclusions and entered a

judgment. We herewith reproduce the opinion of his honor:

"In disposing of the above cause, we will start with the assumption that the contract between Norris Brothers and the Puget Sound & Cascade Railway Company has been substantially completed and particularly insofar as the work of plaintiffs is concerned. Upon this basis, there have been earned on the work done by plaintiffs, Barbo Brothers, amounts as follows:

| | Norris | Barbo |
|---|---|---|
| 49,559.03 yds. earth .........| $18,336.94 | $19,823.61 |
| 564.6 yds. loose rock ........ | 846.90 | 564.60 |
| 90.4 yds. solid rock.......... | 226.00 | 180.80 |
| 757.8 yds. overhaul .......... | 37.90 | 37.90 |
| 6.6022 acres grubbing ... .... | 720.44 | 720.44 |
| 10,897 ft. B. M. (Culvert).... | 544.85 | 544.85 |
| Force account under Norris contract performed by Barbo, shown on estimates..... | 182.50 | 182.50 |
| | $20,895.53 | $22,054.70 |
| Barbo excess .............. | 1,159.17 | |
| | $22,054.70 | |

Barbo force account against Norris Brothers as follows:

| | | |
|---|---|---|
| Force account during period of second estimate ............. | $22.50 | |
| Force account during period of 3rd estimate ............... | 141.75 | |
| Force account during period of 4th estimate ............... | 48.92 | |
| Force account during period of 5th estimate ............... | 2.25 | |
| Force account during period of 6th estimate ............... | 36.00 | |
| Force account during period of 7th estimate ............... | 56.88 | |
| Force account during period of 8th estimate ............... | 65.75 | $374.05 |

Items known as shovel account
    during July ...............$481.25
Items known as shovel account
    during August ............ 687.50      1,168.75

                                            $23,597.50
Payments received ..................  18,156.57

    Balance ........................  $5,440.57

"The evidence clearly shows that the right of way has not been cleared of logs, stumps, debris, etc., required under the Norris contract, and that it will require an expenditure of twelve hundred dollars ($1,200) to complete it, of which amount 30% is chargeable to the Barbo Brothers for their failure to burn stumps and other debris belonging to their part of the work, amounting to $360.00. This deducted from $5,440.57 leaves $5,080.57.

"I have allowed the two items of so-called shovel account amounting to $1,168.75, as these seem to have been adjusted and paid by the Norris Brothers, and are not open to controversy.

"It does not follow, however, that the amount due from Norris Brothers to Barbo Brothers is all lienable. For instance, it is claimed by defendant railway company that the money paid by Norris Brothers to Barbo Brothers was money received from it to apply on the contract, and that the money paid to Barbo Brothers should be credited to the items which might be lienable rather than applied upon the personal account of the Norris Brothers. This claim is particularly applicable to items of the character of the shovel account, and it is evident from the record that the moneys paid to Barbo Brothers were moneys coming almost directly from the hands of the defendant railway company, with the exception of the payment made by Norris Brothers to Barbo Brothers on August 24, 1923, at $2,-759.97, which payment included one item of the shovel account, to-wit: $481.25. As the second payment on the shovel account of $687.50 came directly from the de-

fendant railway company's money, it should be credited to the railroad company as against the claim of lien. To this must also be added the difference in the contract price of $1,159.17 which was not a lienable claim, making $1,846.67 as nonlienable items.

"If the contract were substantially completed so as to entitle plaintiffs to recover at all, then it would be completed prior to the eighth estimate of February 18th, and if the contractor Norris Brothers, or the plaintiffs are liable for the penalty of $10 a day, provided in the contract for non-completion of the work by October 15, 1923, it can not exceed the number of days between October 15 and February 18th, and I am not persuaded the right, if any exists, to claim penalty has been waived by the payments on the contract, as there has at all times been retained by the railway company of the contract price sufficient amount to meet such penalty; nor am I convinced that all this delay was due to the fault of the contractors. However this may be, the delay during July and August of forty-two and one half days during which time the shovel crew were laid off and the teams were turned out to pasture, cannot be attributed to the fault of the defendant railway company, and to this extent, at least, to-wit: $425, I feel that it is entitled to the penalty provided in the contract and is entitled to this deduction as against the lien claims of the plaintiffs, as it is also entitled to the deduction of $360, the cost of burning plaintiffs' part of the stumps and debris on the right of way. Adding these two items to the non-lienable claims makes a total of $2,631.67 to be deducted from the $5,080.57, leaving $2,448.90. That is, between the plaintiffs and the defendants Norris Brothers, the penalty does not apply, as the fault of the delay was apparently that of the Norris Brothers and that the same has been adjusted. The delay being the fault of the Norris Brothers affords no excuse, however, as against the defendant railway company.

"Again, assuming, the contract to have been substantially completed, then there was earned by Norris Brothers, under their contract, as follows:

```
Amount earned under Barbo contract....$20,985.53
Clearing ............................  4,816.34
                                      _____
   Total ............................$25,711.87
Cash received ........................ 21,459.33
                                      _____
   Leaving a balance of................ $4,252.54
From this should be deducted:
For clearing and burning rubbish $1,200.00
Penalty .......................   425.00
                                _____
   Total ......................$1,625.00
                                _____
Net amount due ...............$2,627.54
```

"It is claimed by the defendant railway company that as it has paid Norris Brothers $21,459.33, which amount exceeds the amount earned by Barbo Brothers, after deducting the excess contract price, no lien should be allowed against it. Whatever may be the rule as to the right of claimant being limited to the balance of contract price remaining unpaid, when notice of lien is given where the payments to the contractor are made in good faith in pursuance of the contract before such notice, the rule is not applicable here, as the payments made by the railway company to Norris were upon the entire contract and not simply upon the portion performed by Barbo Brothers, and therefore, if the rule is to be applied, it must be the balance between the entire contract and amounts paid to contractor to which the recovery must be limited, and besides the Norris Brothers have paid to Barbo Brothers a greater sum than the railway company has paid to them for the same work. This is true of each estimate with the exception of one, when there was a "kick-back" of $52.25.

"One of the issues in the case is whether the plaintiffs were subcontractors. While the contract between the railway company and Norris Brothers provides that no part of the contract can be sublet without the written consent of the railway company, yet I think this provision of the contract together with many other similar provisions of the contract has been waived by

the action of the parties, and this waiver not only applies to the railway company in the particular of recognizing the Barbo Brothers as subcontractors, but also on the part of Barbo Brothers in waiving notices in writing required under the terms of the contract by having received and acted upon the same.

"Oral variance binding after execution: *Tingley v. Fairhaven Land Co.*, 9 Wash. 34, 36 Pac. 1098; *Dyer v. Middle Kittitas Irrigation Dist.*, 25 Wash. 80, 64 Pac. 1009; *Crowley v. United States Fidelity & Guaranty Co.*, 29 Wash. 268, 69 Pac. 784; *Long v. Pierce County*, 22 Wash. 330, 61 Pac. 142; *Whiting v. Doughton*, 31 Wash. 327, 71 Pac. 1026; *La Planta v. Hubbard,* 125 Wash. 621, 217 Pac. 20; *Hunters Cattle Co. v. Carstens Packing Co.,* 129 Wash. 377, 225 Pac. 68.

"Now, what has been said has been upon the basis of a substantial compliance of the contract. Were we justified in finding that the contract has been substantially performed? Upon this issue the testimony has been exceedingly conflicting; but when the conclusions of the witnesses are eliminated, and we consider the facts, I think they establish substantial compliance of the contract and particularly that portion covered by the Barbos' subcontract. This, it seems to me, is established by the estimates furnished from time to time by the engineer. Take, for instance, estimate No. 1.

"(a)    The estimate on work, stations 730 plus 61 to 759 is marked 90 per cent complete.

"(b)    On second estimate, stations 730 plus 61 to 762 plus 45, apparently is complete.

"(c)    Station 764 plus 00 to station 800, 95 per cent complete, allowed $1,563.75.

"(d)    Estimate No. 3 stations 764 plus 00 to 800, 95 per cent complete, $1,563.75.

"(e)    Estimate No. 4, stations 764 to station 800, apparently complete, credited $1,646.06, amount allowed being practically the five per cent indicated on the previous estimate.

"(f)    Estimate No. 3, station 800 to station 828 plus 25, earthwork, 90 per cent complete, $856.31.

"(g)  Estimate No. 4, station 800 to 828 plus 25, apparently complete, allowed $952.01.

"(h)  Estimate No. 5, stations 880 to 893, 90 per cent complete, credited $323.58.

"(i)  Stations 893 to 906, earth 90 per cent complete, credited $553.35.

"(j)  Estimate No. 6, stations 880 to 893, apparently complete, credited $359.53.

"(k)  Stations 893 to 906, apparently complete, credited $614.33, indicating that the ten percent incomplete had been completed and credited and so on through these estimates until the final estimate, No. 8, so far as the work covered by the Barbo contract is concerned, indicate nothing incomplete and the contractor given credit for the full amount of work to be done, and while the contract provides that these estimates are not binding upon the railway company, yet, in connection with the other testimony in the case it is quite persuasive of substantial compliance with the contract. *Washington Bridge Co. v. Land & River Imp. Co.*, 12 Wash. 272, 40 Pac. 982; *Windham v. Independent Telephone Co.*, 35 Wash. 166, 76 Pac. 936; *Sweatt v. Hunt*, 42 Wash. 96, 84 Pac. 1; *Harrild v. Spokane School Dist.*, 112 Wash. 266, 192 Pac. 1, 19 A. L. R. 811.

" 'All of the cases hold that a certificate cannot be rightfully withheld after the work has been substantially completed, even though the contract may not have been complied with in every detail, if at the time the work is so substantially completed, it is not reasonable under all the circumstances to require a further compliance.' *Washington Bridge Co. v. Land & River Imp. Co.*, 12 Wash. 272, 40 Pac. 982.

"In arriving at the figures hereinbefore indicated, I have not overlooked the fact that M. E. Norris testified that it would cost twelve hundred dollars ($1,200) to complete the portion of the work covered by his contract, and practically confessed his liability for the same, and while the railway company might be entitled to recover this amount against Norris Brothers upon his admission and confession, I do not feel, in view of the other facts in the case, that the Barbo Brothers should be bound by it.

"Counsel for Norris Brothers, at the beginning of
the trial and several times during the progress thereof,
demanded a jury trial, and objected to the entry of any
personal judgment against the Norris Brothers. The
records, however, do not show that they have complied
with the statute in reference to the demand for a jury
by filing such demand and depositing the jury fee, this,
together with the fact that I doubt the necessity of
splitting the cause of action.

"So personal judgment against the Norris Brothers
for the amount found due over and above the lien may
be entered. Findings may be entered in accordance
herewith, and the motion of the plaintiff to amend its
complaint to conform to the proof will be granted. The
judgment therefore, should be in favor of the plaintiffs
against the defendants Norris Brothers in the sum of
$5,080.57, and a lien be established as against the prop-
erty of the defendant railway company in the sum of
$2,448.90 together with attorneys' fee of three hundred
dollars ($300) and costs, and that the railway company
have judgment against Norris Brothers for any sum
which it is compelled to pay in excess of the amount
found due Norris under the original contract."

The opinion of the trial judge is so comprehensive
and thorough that there is little to add. We approve
the opinion in nearly all respects. In the opinion, the
trial court did not again pass on the demurrer to the
complaint, nor the objections to receiving any evidence,
which it had overruled.

[1] The amended complaint alleged that the road-
bed was constructed, established, and completed by re-
spondents under the immediate, continuous and con-
stant supervision of the engineers of the railway com-
pany, according to the direction and in the manner re-
quired by them, and that respondents completed the
performance of the labor and services and completed
the construction of the roadbed on or about a certain
date.

These allegations are sufficient general allegations of

performance of the contract which they allege. Any specific failure in the performance under the contract was a matter of affirmative allegation on the part of appellants. They made such affirmative allegations, but on the trial the evidence in the case preponderated against them. We agree with the trial court that the evidence showed substantial performance of the contract. The exhibits in the case show that the engineer, who is alleged to be sole, final judge of all performance under the contract, made eight estimates as provided for by the contract; in the seventh and eighth of which it is shown that the contract was substantially completed. The eighth estimate made was, to all intents and purposes, a final estimate showing substantial completion of the contract.

We are therefore of the opinion that respondents alleged and showed substantial performance and compliance with the contract.

The demurrer and objections to the evidence were therefore properly overruled.

There is one matter as to which we think the judgment of the trial court should be modified.

This being an equity suit, the principal contract being before the court for the determination of all matters at issue, and it appearing that Norris Brothers practically confessed that there was an expense of about $1,200 caused the railway company by their acts, we think that amount should be awarded the railway company against Norris Brothers as a personal judgment.

The railway company also complains of the penalty which was allowed and deducted by the court under the penalty clause of the contract; but we are satisfied that the finding and conclusion of the trial court that the only delay chargeable to respondents occurred during

July and August, of forty-two and one-half days, amounting to $425.

[2] As to the contention of Norris Brothers that they were entitled to a jury, while the trial court disposed of that properly upon the grounds, as shown by the record, that they had in effect waived trial by jury by failure to make proper and timely demand and pay the fee therefor, it is also true that, this being an equity case even though money judgments were demanded, no party was entitled to a jury. A jury may not be demanded as a matter of right to try parts of a case which is cognizable in equity, under our decisions. *Garey v. Pasco,* 89 Wash. 382, 154 Pac. 433. See, also, *Young v. Vail,* 29 N. M. 324, 222 Pac. 912, 34 A. L. R. 980; *Twogood v. Allee,* 125 Iowa 59, 99 N. W. 288.

[3] Norris Brothers also object to the allowance of interest from March 1, 1924. The amount due respondents was ascertained by mere computation in which case interest is always allowable from the time the account accrued. *Happy v. Prickett,* 24 Wash. 290, 64 Pac. 528; *McDonald v. Van Houten,* 59 Wash. 593, 110 Pac. 428; *Dixon v. Parker, Morgan & Parker,* 102 Wash. 101, 172 Pac. 856.

[4] Norris Brothers also contend that a personal judgment should not have been entered against them and each of them. Norris Brothers both signed the contract with respondents personally, were therefore each personally, as well as jointly, liable, and both were made parties to the action. The case of *Warren v. Rickles,* 129 Wash. 443, 225 Pac. 424, is therefore not in point where only one of the parties jointly and severally liable as brought into court.

We are satisfied that the judgment of the trial court should be in all things affirmed, except as to the right of the railway company to a personal judgment against

Norris Brothers in the sum of $1,200, with interest from March 1, 1924.

The judgment as modified is affirmed.

TOLMAN, C. J., FULLERTON, MAIN, and MITCHELL, JJ., concur.