### HANSEN & ROWLAND, Inc. v. C. F. LYTLE CO., Inc. et al.
### No. 11639.

Circuit Court of Appeals, Ninth Circuit.
March 16, 1948.

Charles T. Peterson and Peterson & Duncan, all of Tacoma, Wash., and James L. Conley, of Portland, Ore., and for appellant.

J. Charles Dennis, U. S. Atty., of Seattle, Wash., and Harry Sager, Asst. U. S. Atty., of Tacoma, Wash., for appellees.

Before DENMAN, STEPHENS and BONE, Circuit Judges.

BONE, Circuit Judge.

This is a second appeal from a judgment of the district court determining the amount

of insurance premiums to which appellant is entitled from appellees.

Appellee contracting companies, Iowa corporations, entered into a cost-plus-fixed-fee contract with the United States Government to perform certain engineer-management functions in connection with a 155 mile portion, designated Sections A-1 and A-2, of the Alaska highway. Appellees obtained through appellant insurance agent, a Washington corporation, comprehensive liability insurance covering their operations on this portion of the highway. The policy took effect on June 17, 1942, insured appellees and all associate contractors operating on these sections of the highway, and provided for a premium rate of 85¢ per $100 of wages paid to employees of all the contractors. Appellees cancelled the policy as of August 31, 1942. The total wages paid by all the insured from June 17 to September 1, 1942 amounted to $1,055,214.02. Using this amount as the premium base, at the short-rate premium applicable upon appellees' cancellation, appellant claimed (as assignee of the insurance company's claim) and by judgment of the district court was awarded the sum of $16,153.73, plus interest and costs.

Upon appeal from that judgment by the present appellees, we held in substance that work not done in connection with Sections A-1 and A-2 of the highway did not come within the policy coverage and that the payrolls covering work not done in connection therewith could not be used as part of the premium base. C. F. Lytle Co. v. Hansen Rowland, 9 Cir., 151 F.2d 573, 576. In the course of our opinion we stated as follows:

"It was testified and is not disputed that the work done on section A-4 was not directly a part of the A-1 or A-2 section work, and it plainly appears that it was not done in connection with the construction of the latter sections as might have been the case if, for example, it had been done so that A-4 might be used for necessary transmission of A-1 and A-2 supplies.

\* \* \* \* \* \*

"\* \* \* The policy does limit coverage to a specific area. The judgment of the district court awarding the full premium claimed must be reversed. An issue appears to be presented as to whether some part of that section of the payroll representing wages of workers traveling to Alaska prior to assignment comes within the premium base. The cause will be remanded for the taking of such evidence on this or other issues as may be necessary for the entry of a judgment for premiums due in conformity with the views herein expressed as to the policy's coverage limitation."

Pursuant to our mandate the trial court held a further hearing. The only additional evidence produced at this hearing was the testimony of one witness for appellees, who had been resident engineer in Alaska for the Government, in charge of the work being done under appellees' Government contract. This witness testified that during the period in question all of the insured contractors' employees and equipment went to Alaska in connection with construction of the 155 mile section, Sections A-1 and A-2, but that upon arrival they were in large part diverted to employment on other sections of the highway. He testified that some work was necessary to improve and maintain a portion of existing roadway designated Section A-3 in order to move men, equipment and supplies in to Sections A-1 and A-2. At the time of the hearing there was no means of determining the exact payroll for the work of unloading and moving the equipment upon its arrival in Alaska or for the maintenance work on Section A-3. The witness estimated these amounts for the June 17-August 31 period to be $40,000 and $27,594, respectively, and explained his method of arriving at these figures.

The trial court interpreted its duty at the hearing in the following language: "\* \* \* under this decision of the circuit court I feel that I am impelled to find that the insurance rates should be calculated upon all employees, or their wage that they received in working on the two sections, that's 1 and 2, during the period here involved, and in addition thereto, there should be included, insofar as it can be ascertained, the time these same employees, or employees of these same contractors put into unloading the equipment and supplies that were to be used

on this contract, plus the time that they put into maintaining the highway on Section 3, so that it was available for the movement of this heavy equipment, plus any travel time within that period covered by the contract."

Applying the foregoing formula, the trial court found the total remuneration attributable to the premium base to be $320,530.49: this comprised $162,882.68 for travel time, $40,000 for unloading and moving equipment, $90,053.81 for work actually done on Sections A-1 and A-2, and $27,594 for maintaining Section A-3 in order to move equipment, etc. to Sections A-1 and A-2. The earned premium computed on this total remuneration base is $4,904.10, and judgment was entered in favor of appellant for that amount, with costs but without interest.

Two questions are involved on this appeal. First, did the trial court err in the method it employed to arrive at the earned premiums? Second, did the trial court err in failing to allow appellant interest from the date the policy was terminated?

Appellant points to the following provisions contained in the insurance contract:

"It is hereby understood and agreed that this policy is issued upon a Monthly pay-roll basis and that immediately after the expiration of each period of One month from date of policy the Assured shall render a written statement to the Company of the full amount of remuneration paid employees during such period and shall immediately pay the premium thereon based upon the rates stated in the policy.

\*   \*   \*   \*   \*   \*

" \* \* \* The Lytle Construction Company of Sioux City, Iowa and/or Green Construction Company shall assume responsibility for the maintenance of such records as are necessary for the computation of earned premium on said Policy, and for the payment of such earned premium to the Company. If, in the case of any other contractor or sub-contractor covered as an additional named insured under said Policy, the remuneration of such contractor's or sub-contractor's employees is not available to the Company, the earned premium as respects such contractor or sub-contractor shall be computed by using as remuneration 50% of the entire contract or sub-contract cost paid to such contractor or sub-contractor."

From these provisions of the policy, appellant argues (1) that the trial court erred in requiring appellant to bear the burden of establishing the amount of remuneration upon which premiums were to be computed, and (2) that the trial court was bound to compute the earned premium by using as remuneration 50% of the entire contract cost paid each contractor (with modifications hereinafter noted).

Little need be said respecting appellant's first contention. Assuming that appellees had not fulfilled their contractual duty of furnishing proper payroll records to appellant and that the alternative 50% of entire contract cost provision was applicable, the burden of proof would nevertheless remain with appellant to establish the amount of contract cost. Furthermore, from the record it appears that in fact appellees assumed the onus of progressing with the evidence at the rehearing and produced the only additional evidence on the questions which were there to be determined. We are inclined to agree with appellees that the problem here is not one of burden of proof but rather one of contract interpretation. In any event, we cannot spell out from the questioned ruling of the trial court that "the burden is on you [appellant] to establish some amount" any prejudicial error or any such impairment of contract as appellant urges.

It seems evident that appellant's primary concern is the method by which the earned premium should be ascertained. Appellant's present argument in this regard —which it may be remarked has not been seriously suggested prior to this appeal— is that under the above quoted policy provisions, appellees failed to produce the records necessary for premium computation and therefor the alternative 50% of entire contract cost base should have been used by the trial court in computing the premium. Appellant concedes the correctness of including in the premium base the amounts expended for travel time and for

work actually done on Sections A-1 and A-2: a total of $252,936.49. This total excludes the estimates of remuneration for unloading equipment and for maintenance of Section A-3 which were included in the premium base by the trial court. Appellant would add to this $252,936.49, 50% of the difference between that amount and the total amount of wages paid by all the contractors, $1,055,214.02, to arrive at a base figure of $654,075.25, on which the earned premium would be $10,193.20.

■ Appellant's present theory is demonstrably unsound. Appellees furnished to appellant during the period the policy was in effect all the required statements of "the full amount of remuneration paid employees." The record is not clear as to whether appellees maintained and submitted "such records as are necessary for the computation of earned premium," in light of our earlier decision as to the policy coverage. But the express condition in the policy upon which the alternative 50% of entire contract cost provision became operative, was that the remuneration of the contractors' employees be "not available to the Company"—a condition which was not established by appellant at the hearing.

■ There is an even more apparent defect in appellant's present argument. Invocation of the 50% of total contract cost provision as to $654.075.25 of total wages paid, as appellant would have it, would necessarily encompass in the premium base remuneration for work not done in connection with Sections A-1 and A-2. This we have already held cannot be done because of the specifically restricted coverage of the policy. Appellant's formula for computation arrives at a premium base which is equally as improper as the base which we have heretofore explained and held must be condemned.

■ Compliance with our prior holding in this case required that evidence be taken as to remuneration properly includible in computing the premium due. Such evidence was introduced by appellees in the testimony of the Government engineer who was in charge of appellees'

operations. The accuracy of the estimates given by this witness is not challenged by appellant. The trial court acted in harmony with our mandate in including these estimates, absent any better evidence, in the base upon which appellant's premium was figured.

We conclude that the trial court adopted a proper criterion for computation of the premium and that its findings are amply supported by the evidence.

The second question presented is whether appellant is entitled to interest from the time the policy was terminated.

Appellant states that under the law of the State of Washington, which is concededly determinative on this question, interest is allowable from the date an unliquidated claim is due if the amount of the claim can be ascertained by mere computation, though the legal basis of the computation is controverted by the parties. Applying this rule to the facts of the case, appellant reasons that since the premium rate was fixed in the policy, the amount of premium could be determined merely by multiplying the amount of remuneration paid according to appellees' records by the provided rate, and appellant concludes that interest should be charged from September 1, 1942 when the premium to which it is entitled became due.

■ Examination of the Washington cases cited by the parties discloses that the following legal precepts obtain in that jurisdiction. Interest is generally allowable on an unliquidated claim only from the date of judgment. Nelson v. Seattle, 180 Wash. 1, 38 P.2d 1034; Ferber v. Wisen, 195 Wash. 603, 82 P.2d 139. As an exception to this rule, interest is allowable on an unliquidated claim when the amount thereof can be ascertained by mere computation, and the claim is treated as liquidated from the time that its certainty is so determinable. Dornberg v. Black Carbon Coal Co., 93 Wash. 682, 161 P. 845; Barbo v. Norris, 138 Wash. 627, 245 P. 414. Where the amount due is thus determinable by computation, the fact that the legal basis of the computation was a subject of controversy between the parties is immaterial. Empire State Sure-

ty Co. v. Moran Brothers Co., 71 Wash. 171, 127 P. 1104. If evidence is necessary to establish the amount of the claim, then interest anterior to judgment is not allowable. "Where, however, the demand is for something which requires evidence to establish the quantity or amount of the thing furnished or the value of the services rendered, interest will not be allowed prior to judgment." Wright v. Tacoma, 87 Wash. 334, 353, 151 P. 837, 844; Lloyd v. American Can Co., 128 Wash. 298, 314, 222 P. 876; Brewster v. State, 170 Wash. 422, 424, 16 P.2d 813.

The last of the foregoing principles appears to govern the situation in the case at bar. Although this action was originally commenced on the theory of an account stated, this theory was patently inapplicable here and the trial of the case did not proceed upon that basis. After our decision on the first appeal it was necessary for evidence to be introduced in the court below to establish the total amount of remuneration for work performed in connection with Sections A-1 and A-2 of the Alaska highway. Until the several categories of work which came within the policy coverage and the amounts of compensation which made up the premium base were established by competent evidence, appellant's claim could not be determined by "mere computation." Since evidence was obviously necessary in order to ascertain the amount of the premium due, interest was properly not allowed prior to the entry of judgment.

As a further reason for the allowance of interest from due date, appellant urges that our prior decision in this case is res adjudicata on this question. The original judgment of the lower court from which the first appeal was taken awarded interest from September 1, 1942. In our decision reversing the judgment and remanding the case, our only allusion to interest was in describing the judgment of the lower court.

The authorities cited by appellant to the effect that whatever has been decided on one appeal is res adjudicata on a subsequent appeal in the same suit, unquestionably state the law. However, the con-

clusive answer to appellant's contention is that on the prior appeal in this case, the matter of interest was not raised by the parties and was not considered, discussed or decided by this court. Appellant's attempt to ascribe some significance regarding interest to the implied approval in our earlier opinion of the $90,053.81 amount as part of the premium base, is without merit.

We find no error.

Affirmed.